# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TERRY TYRONE PULLEN, JR.,
Plaintiff,

vs

CORRECTIONAL OFFICER
MR. COMBS, *et al.*,
Defendants.

Case No. 1:17-cv-255

Black, J.
Litkovitz, M.J.

**ORDER AND REPORT
AND RECOMMENDATION**

Plaintiff, an inmate at the Southern Ohio Correctional Facility (SOCF), has filed a civil rights complaint under 42 U.S.C. § 1983 naming twenty three SOCF employees as defendants. By separate Order issued this date, plaintiff has been granted leave to proceed *in forma pauperis*. This matter is before the Court for a *sua sponte* review of the complaint to determine whether the complaint or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall,* 898 F.2d

1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin,* 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke,* 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *see also Hill,* 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555 (quoting *Papasan v. Allain,* 478 U.S. 265, 286

(1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

In the complaint, plaintiff claims that on October 9, 2015, inmate Webb spit "blood mixed with saliva into Plaintiff's eye's (sic) and facial area." (Doc. 1-2, Complaint at PageID 16). According to plaintiff, he requested medical attention from defendant C/O Combs because inmate Webb was a known carrier of Hepatitis C. Plaintiff claims that Combs told him that he did not want to do any paper work and that plaintiff should ask a white shirt. Plaintiff alleges that Combs subsequently told plaintiff "I saw that you tried to hit [inmate Webb] so if you say anything you'll be going to J2 'seg' as well!" (*Id.*).

Approximately an hour later, plaintiff claims that Combs accompanied defendants C/O Sears and Nurse K. Joiner through the range while Joiner passed out sick call slips. (*Id.* at PageID 18). Plaintiff claims that he explained that Webb had spit blood and saliva on him and Joiner gave him a sick call slip, but kept moving down the range. According to plaintiff, at this time Combs sprayed him in the right eye with pepper spray and stated "that ain't blood and spit bitch" and told Sears and Joiner "I got that fucker right in the eye. I hate that fucker." (*Id.*). Plaintiff alleges that he tried to breathe through the back vent of his cell, but he noticed that someone blocked the vent.

3

Next, plaintiff claims that defendant Sgt. Bailey came to escort him to segregation. Plaintiff alleges that Bailey told him "you bitches like to file lawsuits you'll learn what officer's your (sic) snitching on because you'll find out those camera's (sic) mean nothing if the administration don't report the incident so it's best for you to lay down before we lay you down!" (*Id.* at PageID 19).

Once in the segregation strip cage, plaintiff asked defendants Bailey, Sgt. Felts, and Unit Manager Oppie if he would be taken to the infirmary to be decontaminated of the O/C spray. Plaintiff indicates that he could not see due to his eyes burning, but Oppie told him there was no detox at SOCF. Plaintiff claims Felts, Oppie, Bailey, and Shaw all began to laugh. Plaintiff further claims that Shaw ordered him "to remove all my clothing then made to put my contaminated fingers with O/C spray on them into my mouth, grab and lift my penis and scrotum then spread my buttocks causing pain to these body parts from the burning of the O/C spray!" (*Id.*). Plaintiff claims he told nurse Tipton about the burning and difficulty breathing. Plaintiff claims that he was told to sign up for a sick call, to take a shower, and to splash cold water in his eyes, but that he was not permitted to shower until the next day. (*Id.* at PageID 19–20).

On October 15, 2015, plaintiff claims that defendant RN Hart came to his cell in response to inmate Webb spitting on him. (*Id.* at PageID 20). According to plaintiff, Hart asked him if he had been spit on earlier that day. Plaintiff claims that he tried to explain to Hart that the incident occurred on October 9, 2015, but that Hart said she was not responding to something that happened six days prior, but for what happened earlier that day. Plaintiff informed Hart that he was not spit upon on October 15, 2015, so Hart left his cell. (*Id.* at PageID 20–21).

Plaintiff next complains that on October 11, 2015, Shaw came to his cell and informed

4

plaintiff that the nurse needed to see him. (*Id.* at PageID 22). En route to see the nurse, plaintiff claims that he noticed inmate Peyton taking his right hand out of his handcuffs. (*Id.* at PageID 23). According to plaintiff, Peyton said "I got your snitching ass now!" before Shaw told Peyton "not right here you stupid fuck the cameras can see you coming out of that handcuff so put it back on!" (*Id.*). Plaintiff alleges that after Peyton continued to threaten him, Shaw told plaintiff "you should have never come out for this sick call so do you want to go back to your cell and deny seeing the nurse?" (*Id.*). Plaintiff claims he told Shaw that he needed to see the nurse because he could hardly see out of his right eye due to the October 9, 2015 pepper spray incident. Shaw allegedly responded, "your (sic) going to get what you deserve today." (*Id.*). Plaintiff claims that Shaw subsequently allowed Peyton to fill out a sick call card and put his handcuffs on Peyton loosely. Peyton then threatened plaintiff, "your (sic) dead when you come out of there," referring to the infirmary. (*Id.* at PageID 24). Plaintiff claims that while he was seeing Nurse Hill, Shaw told Hill "make this quick because this fucker is getting what he deserves today and I'm going to spray the fuck out of him!" (*Id.*).

Plaintiff claims that after exiting the infirmary he was attacked by Peyton. According to plaintiff, Peyton removed his handcuffs and punched him repeatedly. (*Id.* at PageID 26). Plaintiff claims Shaw did nothing to protect him from the attack, but instead began spraying plaintiff in the face with pepper spray. Plaintiff alleges that after Payton slammed plaintiff's head against the concrete floor repeatedly, Shaw told Peyton to stop or he would have to spray him. Plaintiff claims that Peyton responded "spray me I don't care because he was going to make this free shot on him worth it!" (*Id.* at PageID 26–27). Plaintiff claims Peyton then pushed his thumb into plaintiff's eye socket, before Shaw and defendant C/O Clere finally pulled Peyton

5

off of him. (*Id.* at PageID 27).

Plaintiff claims that following the incident he was taken to the strip cage to be checked on by Nurse Hill. According to plaintiff, although he had blood running down his face, Hill stated that he only needed Tylenol. Plaintiff further alleges that he asked defendant Lt. Haywood if he would provide him with the opportunity to take a shower to wash the blood and pepper spray off of him, but he responded, "I'm not waiting for you to wash a little blood and pepper spray off you." (*Id.*).

Plaintiff claims that he subsequently received a conduct report for fighting in connection with the October 11, 2015 incident. (*Id.* at PageID 28). Plaintiff alleges that although he stated he wanted to be present for the Rules Infraction Board (RIB) hearing, defendants Sgt. Felts, Ms. Felts, and Lt. Sammons reviewed the surveillance video of the incident outside of his presence and told him there was no need for him to attend the hearing. (*Id.* at PageID 29).

Plaintiff next complains that on October 30, 2015, defendant RN Jane Doe refused him his morning medication prescribed for seizures. (*Id.* at PageID 37). Plaintiff claims that he tried to get Jane Doe's attention by banging on his cell door. According to plaintiff, Sgt. Felts and C/O Shaw came to his cell and Felts asked why he was making noise. Felts allegedly told plaintiff he was not getting his medication. Plaintiff informed Felts that he would write him, Ms. Felts, and Lt. Sammons up for failing to permit plaintiff to attend his October 14, 2015 RIB hearing. Plaintiff claims that Felts responded by telling Shaw, "I believe [plaintiff] needs a cell search!" and spraying him with a fogger can of OC spray through the cell food hatch. (*Id.* at PageID 39). Plaintiff claims that Shaw then closed the food hatch and both officers walked away. Plaintiff claims that his eyes and body began to burn and he struggled to breathe.

6

Plaintiff alleges that RN Jane Doe later returned to his cell and asked if he was injured. However, plaintiff claims that he was still choking from the fumes and unable to breathe. According to plaintiff, Jane Doe left his cell and he was never allowed to decontaminate.

Plaintiff claims that Sgt. Felts wrote a false conduct report stating that plaintiff spit at him prior to the October 30, 2015 incident. Plaintiff claims he was found guilty by defendants Sammons, Oppie, and Felts in a subsequent RIB hearing. According to plaintiff, after the RIB hearing Sgt. Felts, Ms. Felts, and Sgt. Bear wheeled him off camera and attacked him. (*Id.* at PageID 45). Plaintiff claims he gave a sick call request to RN John Doe but Doe threw the request in the trash can. (*Id.* at PageID 45).

Finally, the complaint documents plaintiff's efforts to seek relief through the prison grievance process regarding each of the above incidents. Plaintiff generally alleges that defendants Lewis, Sammons, Mahlman, Parks, Davis, and Nolan, as well as Institutional Inspector Miller, Warden Erdos, Chief Inspector Roger Wilson, Lt. Boggs, and Greene,[1] were put on notice of the various incidents described above, ignored or wrongly decided his grievances, and/or disregarded his requests for grievance forms. (*See id.* at PageID 20, 21, 22, 28, 30, 33, 35, 40, 41, 45).

Plaintiff alleges that on October 24, 2015, he was placed on grievance restriction by defendant Hunyadi on the ground that he filed thirty informal complaint resolutions and four grievances from August 1, 2015 to October 24, 2015. (*Id* at PageID 33). Plaintiff claims that defendants could not produce all the complaints or grievances. (*Id.* at PageID 35).

Based on the above factual allegations, plaintiff seeks injunctive relief and monetary

---

[1] Miller, Erdos, Wilson, Boggs, and Greene are not named as defendants to this action. (*See* Doc. 1, Complaint at PageID 13–14).

damages. (*Id.* at PageID 47).

At this juncture in the proceedings, without the benefit of briefing by the parties to this action, the undersigned concludes that plaintiff may proceed with the following claims: (1) plaintiff's Eighth Amendment claim for the use of excessive force against defendant Combs, based on his allegations that Combs sprayed him in the eye with pepper spray on October 9, 2015; (2) plaintiff's excessive force claims against defendants Ms. Felts, Sgt. Felts, and Sgt. Bear, based on his allegations that these defendants attacked him on November 10, 2015; (3) his excessive force claim against defendants Sgt. Felts and C/O Shaw based on his allegation that these defendants sprayed him with a fogger can of mace on October 30, 2015; (4) plaintiff's claim that defendants Sgt. Felts, Oppie, Bailey, Shaw, and Haywood violated his Eighth Amendment rights by failing to allow him to detox after being sprayed with mace; (5) plaintiff's failure to protect claim, based on his allegation that Shaw and C/O Clere failed to protect him from inmate Peyton during the October 11, 2015 incident; and (6) plaintiff's claim that defendants Hill, Hart, and Jane Doe nurse allegedly denied him medical care. These claims are worthy of further development and may proceed at this juncture. However, plaintiff's remaining claims should be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

As an initial matter, the complaint should be dismissed as to defendants Cool, Bell, and Conley. Plaintiff has not made any factual allegations against these defendants in the complaint. Plaintiff's complaint should also be dismissed as to defendant Joiner, as plaintiff's only allegation against defendant Joiner is that she provided him with a sick call slip. (*See* Doc. 1, Complaint at PageID 18). Similarly, the complaint should be dismissed against defendant Mr.

Sears. Plaintiff's sole allegation against Sears is that he was present when Combs sprayed him with mace. (*See id.* at PageID 18). Plaintiff's allegations against these defendants do not rise to the level of a constitutional violation.

The complaint should also be dismissed as to defendants in their official capacities to the extent that plaintiff seeks monetary damages. Absent an express waiver, a state is immune from damage suits under the Eleventh Amendment. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139 (1993); *Edelman v. Jordan*, 415 U.S. 651 (1974). The State of Ohio has not constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449 (6th Cir. 1982). The Eleventh Amendment bar extends to actions where the state is not a named party, but where the action is essentially one for the recovery of money from the state. *Edelman*, 415 U.S. at 663; *Ford Motor Company v. Dept. of Treasury*, 323 U.S. 459, 464 (1945). A suit against defendants in their official capacities would, in reality, be a way of pleading the action against the entity of which defendants are agents. *Monell*, 436 U.S. at 690. Thus, actions against state officials in their official capacities are included in this bar. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989); *Scheuer v. Rhodes*, 416 U.S. 232 (1974). *See also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (citation and ellipsis omitted)). Therefore, all of the named defendants are immune from suit in their official capacities to the extent that plaintiff seeks monetary damages.

To the extent that plaintiff intends to bring a claim against defendant Bailey or any other defendant based on threats or verbal harassment he has failed to state a viable claim under § 1983, which requires a showing of a deprivation of "a right secured by the United States Constitution or a federal statute." *See Spadafore v. Gardner*, 330 F.3d 849, 852 (6th Cir. 2003). It is well-settled that "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief." *Wingo v. Tennessee Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)); *see also Chilcott v. Erie Cnty. Domestic Relations*, 283 F. App'x 8, 11 (3rd Cir. 2008) (and Sixth, Fifth and Tenth Circuit cases cited therein). *Cf. Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545–46 (6th Cir. 2004).

Plaintiff also fails to state a viable constitutional claim under the Fourteenth Amendment against defendants Sgt. Felts, Ms. Felts, Oppie, and Sammons in connection with the RIB hearing, because the challenged disciplinary action did not amount to a deprivation of a constitutionally protected liberty interest. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that the Fourteenth Amendment confers on prisoners only a "limited" liberty interest "to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or which "will inevitably affect the duration of his sentence." *Sandin*, 515 U.S. at 484, 487; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Williams v. Wilkinson,* 51 F. App'x 553, 556 (6th Cir. 2002). The Sixth Circuit has held that confinement in segregation generally does not rise to the level of an "atypical and significant" hardship implicating a liberty interest except in "extreme circumstances, such as when the prisoner's complaint alleged that he is subject to an *indefinite*

administrative segregation" or that such confinement was excessively long in duration. *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)) (emphasis in original); *see also Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (holding that the prisoner's 8-year confinement in segregation was of "atypical duration" and thus "created a liberty interest that triggered his right to due process"). *Cf. Wilkinson v. Austin*, 545 U.S. 209, 223–24 (2005) (ruling that an inmate's transfer to Ohio's "supermax" prison "imposes an atypical and significant hardship" given the combination of extreme isolation of inmates, prohibition of almost all human contact, indefinite duration of assignment, and disqualification for parole consideration of otherwise eligible inmates).

Here, plaintiff has not alleged that the challenged disciplinary proceeding resulted in the lengthening of his prison sentence, the withdrawal of good-time credits, or the deprivation of any necessities of life. Moreover, plaintiff has not alleged any facts to suggest that he was subjected to a lengthy disciplinary placement amounting to an atypical or significant hardship that would trigger constitutional concerns. Accordingly, because plaintiff does not have a protected liberty interest under the circumstances alleged herein, any claim against the defendants for their conduct in the disciplinary proceedings fails to state a cognizable federal claim under the Fourteenth Amendment's Due Process Clause.

Plaintiff has also not stated a constitutional claim to the extent he has alleged that defendant Sgt. Felts wrote a false conduct report which resulted in the disciplinary sanction that was imposed by the RIB. Erroneous or even fabricated allegations of misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional right. *See, e.g., Reeves v. Mohr*, No. 4:11cv2062, 2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012) (and cases cited

therein) (holding that the prisoner failed to state a claim upon which relief may be granted to the extent that he claimed he had "a constitutional right to be free from false accusations"). "A constitutional violation may occur, if as a result of an accusation, the Plaintiff was deprived of a liberty interest without due process." *Reeves, supra*, 2012 WL 275166, at *2 (citing *Sandin v. Conner*, 515 U.S. 472, 485 (1995)). However, as noted above, plaintiff's allegations are insufficient to trigger constitutional concerns because he has not alleged any facts even remotely suggesting that the challenged disciplinary action deprived him of a protected liberty interest.

Plaintiff's allegations against defendants Lewis, Sammons, Mahlman, Parks, Davis, Nolan, and Hunyadi in connection with the grievance process also fail to give rise to an actionable § 1983 claim. There is no right under the Constitution to an effective prison grievance procedure. *See, e.g., Hill v. Warden, Southern Ohio Corr. Facility*, No. 1:12cv63, 2012 WL 1639991, at *2 (S.D. Ohio Mar. 13, 2012) (Litkovitz, M.J.) (Report & Recommendation) (recommending dismissal of portion of complaint complaining about "the failure of prison staff to provide [plaintiff] with inmate grievance forms and other deficiencies in the inmate grievance procedure" because "plaintiff has no federal constitutional right to an effective prison grievance procedure"), *adopted*, 2012 WL 1623565 (S.D. Ohio May 9, 2012) (Weber, J.); *Dearing v. Mahalma*, No. 1:11cv204, 2011 WL 3739029, at *7 (S.D. Ohio Aug. 24, 2011) (Barrett, J.) (holding that the plaintiff's allegations referring to "his dissatisfaction with the . . . investigation of [an] allegedly mishandled letter" through the prison grievance process did not state an actionable claim under 42 U.S.C. § 1983); *Williams v. Harris*, No. 1:11cv362, 2011 WL 3667438, at *3 (S.D. Ohio June 15, 2011) (Litkovitz, M.J.) (Report & Recommendation) (recommending dismissal of complaint against prison official responsible for responding to institutional grievances because the plaintiff had "no constitutional right to an effective grievance

procedure"), *adopted*, 2011 WL 3667389 (S.D. Ohio Aug. 22, 2011) (Dlott, J.); *see also Walker v. Michigan Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005) (per curiam) (and cases cited therein); *Argue v. Hofmeyer,* 80 F. App'x 427, 430 (6th Cir. 2003) (and cases cited therein); *Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000). Therefore, plaintiff's claims against the defendants named in connection with the grievance process should be dismissed.

Finally, plaintiff's claim regarding being placed on grievance restriction should be dismissed. As noted above, plaintiff claims defendant Hunyadi placed him on grievance restriction on the ground that he filed thirty informal complaint resolutions and four grievances from August 1, 2015 to October 24, 2015. (Doc. 1, Complaint at PageID 33, 35). To the extent that plaintiff claims that his modified access to the grievance process resulted in a constitutional violation, he has also failed to state a claim upon which relief may be granted. "The Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim." *Weatherspoon v. Williams*, No. 2:14-cv-108, 2015 WL 2106401, at *5 (W.D. Mich. May 6, 2015) (citing *Jackson v. Madery,* 158 F. App'x. 656, 660 (6th Cir. 2005); *Walker v. Michigan Dep't of Corr.,* 128 F. App'x 441, 446 (6th Cir. 2005); *Kennedy v. Tallio,* 20 F. App'x. 469, 471 (6th Cir. 2001); *Corsetti v. McGinnis,* 24 F. App'x. 238, 241 (6th Cir. 2001)). The right to file institutional grievances without being subject to retaliation extends only to the filing of non-frivolous grievances and "an ordinary person of reasonable firmness would not be deterred from filing non-frivolous grievances merely because he or she had been placed on modified status." *Walker,* 128 F. App'x. at 445–46. Accordingly, plaintiff has failed to state a claim upon which relief may be granted to the extent that he alleges

a First Amendment violation in connection with being placed on restricted access to the grievance process.

Accordingly, in sum, plaintiff may proceed with the following claims: (1) plaintiff's Eighth Amendment claim for the use of excessive force against defendant Combs, based on his allegations that Combs sprayed him in the eye with pepper spray on October 9, 2015; (2) plaintiff's excessive force claims against defendants Ms. Felts, Sgt. Felts, and Sgt. Bear, based on his allegations that these defendants attacked him on November 10, 2015; (3) his excessive force claim against defendants Sgt. Felts and C/O Shaw based on his allegation that these defendants sprayed him with a fogger can of mace on October 30, 2015; (4) plaintiff's claim that defendants Sgt. Felts, Oppie, Bailey, Shaw, and Haywood violated his Eighth Amendment rights by failing to allow him to detox after being sprayed with mace; (5) plaintiff's failure to protect claim, based on his allegation that Shaw and C/O Clere failed to protect him from inmate Peyton during the October 11, 2015 incident; and (6) plaintiff's claim that defendants Hill, Hart, and Jane Doe nurse allegedly denied him medical care. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

Having found that plaintiff's remaining claims fail to state a claim upon which relief may be granted, these claims should be dismissed.

## IT IS THEREFORE RECOMMENDED THAT:

The complaint be **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), **with the exception of the following claims**, which may proceed: (1) plaintiff's Eighth Amendment claim for the use of excessive force against defendant Combs, based on his allegations that Combs sprayed him in the eye with pepper spray on October 9, 2015; (2) plaintiff's excessive force claims against defendants Ms. Felts, Sgt. Felts, and Sgt.

Bear, based on his allegations that these defendants attacked him on November 10, 2015; (3) his excessive force claim against defendants Sgt. Felts and C/O Shaw based on his allegation that these defendants sprayed him with a fogger can of mace on October 30, 2015; (4) plaintiff's claim that defendants Sgt. Felts, Oppie, Bailey, Shaw, and Haywood violated his Eighth Amendment rights by failing to allow him to detox after being sprayed with mace; (5) plaintiff's failure to protect claim, based on his allegation that Shaw and C/O Clere failed to protect him from inmate Peyton during the October 11, 2015 incident; and (6) plaintiff's claim that defendants Hill, Hart, and Jane Doe nurse allegedly denied him medical care.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff shall submit a copy of his complaint for defendants Mr. Combs, Ms. Felts, Sgt. Felts, Sgt. Bear, C/O Shaw, Unit Manager Jeremy Oppie, Mr. Bailey, Lt. Haywood, C/O Clere, RN Teresa Hill, and RN Lauren Hart within **thirty (30) days** of the date of this Order. Once copies of plaintiff's complaint are received, the Court will order service of process by the United States Marshal.

2. Before service may be issued upon any remaining John Doe defendant, plaintiff must file a motion to issue service setting forth the identity of the unidentified defendant. Plaintiff is therefore **ORDERED** to file a motion to issue service, including United States Marshal and summons forms, if and when plaintiff discovers the identity of the unnamed defendant through discovery. Plaintiff is advised that no service will be issued on the unnamed defendant unless plaintiff complies with this Order.

3. Plaintiff shall serve upon defendants or, if appearance has been entered by counsel, upon defendants' attorney(s), a copy of every further pleading or other document submitted for

consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to defendants or defendants' counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

4. Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.

Date: 8/21/17

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| TERRY TYRONE PULLEN, JR.,<br>Plaintiff,<br><br>vs<br><br>CORRECTIONAL OFFICER<br>MR. COMBS, *et al.*,<br>Defendants. | Case No. 1:17-cv-255<br><br>Black, J.<br>Litkovitz, M.J. |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).