# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TERRY TYRONE PULLEN, JR.,
Plaintiff,

vs.

MR. COMBS, et al.,
Defendants.

Case No. 1:17-cv-255

Barrett, J.
Litkovitz, M.J.

**ORDER AND REPORT
AND RECOMMENDATION**

Plaintiff, an inmate at the Southern Ohio Correctional Facility ("SOCF"), brings this prisoner civil rights action under 42 U.S.C. § 1983 seeking injunctive relief and monetary damages on his claims that defendants Mr. Combs, Ms. Felts, Sergeant Felts, Sergeant Bear, and corrections officer Shaw used excessive force against him; defendants Sergeant Felts, Unit Manager Jeremy Oppie,[1] Mr. Bailey, Mr. Shaw and Lieutenant Haywood violated his Eighth Amendment rights by failing to allow him to decontaminate after being sprayed with OC (oleoresin capsicum) or pepper spray; defendants Shaw and C/O Clere[2] failed to protect plaintiff from harm by another inmate; and defendants RN Teresa Hill, Lauren Hart and Jane Doe denied plaintiff medical care. (Doc. 1-2). This matter is before the Court on defendants Combs, Ms. Felts, Sergeant Felts, Bear, Shaw, Oppy, Bailey, Hart, Haywood and Hill's motion to dismiss the complaint for failure to state a claim for relief (Doc. 29), plaintiff's response in opposition (Doc. 37), and defendants' reply in support of the motion (Doc. 41). This matter is also before the Court on defendant RN Wamsley's[3] motion to dismiss the complaint for failure to state a claim

---

[1] The correct spelling of this defendant's last name is "Oppy."

[2] Clere has been named as a defendant but has not yet been served.

[3] RN Wamsley was initially named as a Jane Doe defendant in the complaint and was later identified by plaintiff and served.

for relief (Doc. 44), plaintiff's response in opposition (Doc. 47), and defendant's reply (Doc. 50).

## I. Background

Plaintiff filed his complaint in this matter on April 19, 2017. (Doc. 1-2). After conducting a *sua sponte* review of the complaint, the Court found that plaintiff could proceed on the claims set forth above. (Docs. 7, 8). Plaintiff makes the following allegations in support of his claims, which the Court accepts as true for purposes of the motion to dismiss:

On October 9, 2015, defendant Combs was escorting inmate Webb to the shower when Webb spit "blood mixed with saliva into Plaintiff's eye's (sic) and facial area." (Doc. 1-2, Complaint at 7). Plaintiff told Combs he needed medical attention because Webb was a known carrier of the Hepatitis C virus. Combs told plaintiff that he was not about to do any paper work and that plaintiff should wait for a "white shirt 'Lt. Sgt. or Capt.' to do their rounds" to ask for medical attention. When Combs subsequently escorted Webb out of the shower, Combs told Webb to jump away from plaintiff's cell and told plaintiff, "I saw that you tried to hit [Webb] so if you say anything you'll be going to J2 'seg' (segregation) as well!" (*Id.*). Approximately one hour later, Combs accompanied C/O Sears and Nurse K. Joiner through the range while Joiner passed out sick call slips. (*Id.* at 9). Plaintiff tried to stop Joiner and explained that Webb had spit blood and saliva on him. Joiner gave him a sick call slip, and C/O Sears told Joiner to keep moving. As plaintiff's head was turned and he continued to tell Joiner about Webb while she and Sears continued down the range, Combs sprayed plaintiff in the right eye with OC spray. Combs told plaintiff, "that ain't blood and spit bitch," laughed, and told Sears and Joiner, "I got that fucker right in the eye. I hate that fucker!" (*Id.*). The OC spray burned plaintiff's eyes and choked him. Plaintiff tried to breathe through the back vent of his cell but someone had blocked

2

the vent.

A few minutes later, defendant Bailey escorted plaintiff to J2, the segregation unit. (*Id.* at 10). Once in the segregation strip cage, plaintiff asked defendants Bailey, Sergeant Felts and Unit Manager Oppy if he would be taken to the infirmary to be decontaminated of the OC spray. Plaintiff could not see due to his eyes burning, but Oppy told him there was no decontamination at SOCF for inmates who get OC sprayed, and Felts, Oppy, Bailey, and Shaw laughed. Shaw ordered plaintiff to remove his clothing and then made plaintiff put his OC contaminated-fingers into plaintiff's mouth, grab and lift his penis and scrotum, and then spread his buttocks, which caused burning pain to these body parts. (*Id.*). When seen by a nurse some time later, plaintiff complained of breathing problems, trouble seeing out of his right eye, and a burning sensation in his genitalia. Although plaintiff was advised by medical personnel to sign up for sick call, splash water in his eyes, and take a shower, plaintiff was not permitted to shower until the next day. (*Id.* at 10-11).

On October 15, 2015, defendant RN Hart came to plaintiff's cell in response to the Webb spitting incident. (*Id.* at 11). Hart asked him if he had been spat on earlier that day. Plaintiff explained to Hart that the incident had occurred on October 9, 2015, but Hart said she was not responding to something that had happened six days prior but only for what had happened earlier that day. Plaintiff informed Hart there was no spitting incident that day, so Hart left his cell. (*Id.* at 11-12).

On October 11, 2015, Shaw came to plaintiff's cell and informed him that the nurse needed to see him for nurse sick call. (*Id.* at 12). En route to see the nurse, plaintiff saw inmate Peyton in the stairwell taking his right hand out of his handcuffs. (*Id.* at 14). Peyton said, "I got your snitching ass now!" Shaw told Peyton, "Not right here you stupid fuck[,] the camera's (sic)

3

can see you coming out of that handcuff so put it back on!" (*Id*.). Peyton put his hand back in the handcuff, but Shaw did not check to make sure it was secured. Peyton told plaintiff he was going to assault him that day. Shaw then told plaintiff, "You should have never come out for this sick call so do you want to go back to your cell and deny seeing the nurse?" (*Id*.). Plaintiff told Shaw that he needed to see the nurse because he could "hardly see out of" his right eye due to the October 9, 2015 OC spray incident. Shaw responded, "Your (sic) going to get what you deserve today!" (*Id*.). Shaw subsequently allowed inmate Peyton to fill out a sick call slip, and when he was finished Shaw put Peyton's handcuffs back on loosely. As Peyton exited the mini-infirmary, he threatened plaintiff by telling him, "Your [sic] dead when you come out of there." (*Id*. at 15). When plaintiff was in with Nurse Hill, Shaw told her to "[m]ake this quick because this fucker is getting what he deserves today and I'm going to spray the fuck out of him!" (*Id*.).

After exiting the mini-infirmary, plaintiff was attacked by Peyton. Peyton removed his handcuffs and punched plaintiff repeatedly. (*Id*. at 16-17). Shaw did nothing to protect him from the attack, but instead began spraying plaintiff in the face with OC spray. After Peyton slammed plaintiff's head against the concrete floor repeatedly, Shaw told Peyton to stop or he would have to spray him. (*Id*. at 17). Peyton then pushed his thumb into plaintiff's eye socket before Shaw and C/O Clere finally pulled Peyton off of plaintiff. (*Id*. at 18).

Following the incident, plaintiff was taken to the strip cage to be checked by Nurse Hill. Although plaintiff had blood running down his face, Hill stated that he only needed Tylenol. She advised plaintiff to sign up for nurse sick call and take a shower. Plaintiff asked defendant Lieutenant Haywood if he would provide him with the opportunity to take a shower to wash the blood and OC spray off, but Haywood responded, "I'm not waiting for you to wash a little blood and pepper spray off you." (*Id*.).

On October 30, 2015,[4] defendant Jane Doe refused plaintiff his morning medication prescribed for seizures. (*Id.* at 28). Plaintiff tried to get Nurse Jane Doe's attention by requesting his medicine repeatedly and banging on his cell door. Sergeant Felts came to his cell, asked why he was making noise, and told him he was not getting his medication. (*Id.* at 28, 30). Plaintiff informed Felts that he would write him, his "funny built" wife Ms. Felts, and Lieutenant Sammons up for not permitting plaintiff to attend his October 14, 2015 RIB hearing. Defendant Shaw, who was present, told Felts, "I believe [plaintiff] needs a cell search!" Felts told plaintiff to put on his suicide smock and cuff up. As plaintiff took off the cover he was wrapped in and while he was naked, Shaw opened the food tray hatch of plaintiff's plexiglass-front cell and Felts sprayed plaintiff with a fogger can of OC spray through the hatch. Shaw then closed the hatch, and both officers walked away. (*Id.* at 30). Plaintiff's eyes and body began to burn, he choked, and he struggled to breathe. RN Jane Doe later returned to plaintiff's cell and asked if he was injured. (*Id.*). Plaintiff was still choking from the fumes and struggling to breathe. (*Id.* at 32). Jane Doe said she supposed plaintiff was alright when he could not answer and then left his cell, and he was never allowed to decontaminate.

After a RIB hearing on November 10, 2015, as Bear was wheeling plaintiff down the hall, Bear, Sergeant Felts and Ms. Felts wheeled plaintiff so that he was out of sight of the camera. Ms. Felts slapped plaintiff on the right side of his face, Sergeant Felts slapped plaintiff twice on the left side of his face, and Sergeant Bear punched plaintiff in the back of his head. (*Id.* at 32, 34). Plaintiff gave a sick call request to RN John Doe, who threw the request in the trash can. (*Id.* at 36).

The following claims for relief remain pending following initial screening under 28

---

[4] Plaintiff states at one point that this incident occurred on November 30, 2015, which is an apparent mistake. (*Id.* at 32).

U.S.C. §§ 1915(e)(2)(B), 1915A(b): (1) plaintiff's Eighth Amendment claim against defendant

Combs for the use of excessive force based on his allegations that Combs sprayed him in the eye

with OC spray on October 9, 2015; (2) plaintiff's excessive force claims against defendants Bear,

Ms. Felts and Sergeant Felts based on his allegations that these defendants slapped and punched

him on November 10, 2015; (3) his excessive force claims against defendants Shaw and Sergeant

Felts based on his allegation that these defendants sprayed him with a fogger can of OC spray on

October 30, 2015; (4) plaintiff's claim that defendants Shaw, Sergeant Felts, Oppy and Bailey

violated his Eighth Amendment rights by not allowing him to decontaminate after being sprayed

with OC spray on October 9, 2011; (5) plaintiff's claim that defendant Haywood violated his

Eighth Amendment rights by not allowing him to decontaminate after being sprayed with OC

spray on October 11, 2011; (6) plaintiff's failure to protect claim based on his allegation that

defendants Shaw and C/O Clere failed to protect him from harm by inmate Peyton during the

October 11, 2015 incident; and (7) plaintiff's Eight Amendment claims against defendants Hill,

Hart, and the Jane Doe nurse based on the alleged denial of medical care on October 11, 15 and

30, 2015.  (Docs. 7, 8).

## II. Defendants' motions to dismiss the complaint (Docs. 29, 44)

Defendants move to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) on

the ground the complaint fails to state a claim upon which relief can be granted.  (Docs. 29, 44).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations

as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*,

684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir.

2005)).  Only "a short and plain statement of the claim showing that the pleader is entitled to

relief" is required.  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).  "[T]he statement need only give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting

*Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell*

*Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Although the plaintiff need not plead

specific facts, the "[f]actual allegations must be enough to raise a right to relief above the

speculative level" and to "state a claim to relief that is plausible on its face." *Id.* (quoting

*Twombly,* 550 U.S. at 555, 570). A plaintiff must "plead[] factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

(quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

It is well-settled that a document filed pro se is "to be liberally construed" and that a pro

se complaint, "however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers [.]" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S.

97, 106 (1976). However, the Sixth Circuit has recognized that the Supreme Court's liberal

construction case law has not had the effect of "abrogat[ing] basic pleading essentials" in pro se

suits. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

When deciding a motion to dismiss, the Court can consider "the Complaint and any

exhibits attached thereto, public records, items appearing in the record of the case and exhibits

attached to [the] defendant's motion to dismiss, so long as they are referred to in the Complaint

and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528

F.3d 426, 430 (6th Cir. 2008). *See also Mediacom Southeast LLC v. BellSouth*

*Telecommunications, Inc.,* 672 F.3d 396, 399 (6th Cir. 2012). "While documents integral to the

complaint may be relied on . . . it must also be clear that there exist no material disputed issues of

fact regarding the relevance of the document." *Ouwinga v. Benistar 419 Plan Serv. Inc.*, 694

F.3d 783, 797 (6th Cir. 2012) (citing *Mediacom Se. LLC*, 672 F.3d at 400; *Knowlton v. Shaw*,

708 F.Supp.2d 69, 75 (D. Me. 2010) ("[I]f the parties do not dispute a central document, a court may consider it in ruling on a motion to dismiss; yet, if there is a genuine dispute, the legal sufficiency of the cause of action is better tested in a motion for summary judgment.")).

## A. Defendants' motion to dismiss (Doc. 29) should be granted in part.

Defendants move to dismiss plaintiff's claims on the grounds (1) plaintiff fails to state cognizable claims under 42 U.S.C. § 1983 for violations of his Eighth Amendment rights based on the use of excessive force and deliberate medical indifference, and defendants are entitled to qualified immunity on these claims; and (2) plaintiff's claims against defendants Combs, Bailey, Sergeant Felts, Oppy, Shaw and Hart related to the October 9, 2015 incident are barred by the doctrine of collateral estoppel and by the *Leaman* doctrine. (Doc. 29).

### i. Collateral estoppel/*Leaman* doctrine

Plaintiff brings claims for excessive force and deliberate indifference to his medical needs based on the events of October 9, 2015. (Doc. 1-2 at 7-11). Plaintiff alleges that defendant Combs sprayed him in the right eye with OC spray after plaintiff had explained that inmate Webb, who plaintiff claimed was infected with the Hepatitis C virus, spat blood and saliva at him and plaintiff requested to be seen by medical staff. Plaintiff alleges that after Combs sprayed him with OC spray, defendants Bailey, Sergeant Felts, Shaw and Oppy showed deliberate indifference to his medical needs. Plaintiff alleges that his eye was burning, he was having trouble seeing out of it, and he was having difficulty breathing, and he was required to undergo a strip search during which defendants required him to put his contaminated fingers into his mouth and touch his penis, scrotum and buttocks. Plaintiff alleges that he asked if he would be taken to the infirmary to be decontaminated of the OC spray but Oppy told him there was no decontamination at SOCF while the other defendants laughed. Plaintiff alleges that his eyes

were burning and that touching his body parts with his contaminated hands caused burning. Plaintiff alleges he was seen by a nurse some time later who advised him to take a shower, but he was not allowed to shower until the next day.

Defendants move to dismiss all claims against defendants Combs, Bailey, Sergeant Felts, Oppy, Shaw and Hart arising out of the October 9, 2015 incident on the grounds (1) those claims are barred by the doctrine of collateral estoppel, and (2) plaintiff waived the claims under the *Leaman* doctrine by filing suit in the Ohio Court of Claims against the ODRC. (Doc. 29 at 30-36, citing *Pullen v. Dept. of Rehab. and Corr.*, No. 2016-00503 (Ohio Ct. of Claims, 6/24/2016)).[5] Defendants contend that the underlying facts and issues in this case were litigated in the Ohio Court of Claims action. Defendants note that plaintiff alleged in the state court case that Combs sprayed him in the face with OC spray; Bailey, Sergeant Felts, Oppy and Shaw refused to decontaminate him; plaintiff's eyes, penis, scrotum, buttocks, skin and mouth continued to burn for three days as a result of not being decontaminated; and Nurse Hart came to his cell on October 15, 2015 and refused to treat plaintiff for being spat on by inmate Webb because the incident had occurred six days earlier. The Court of Claims found that plaintiff did not prove his claims under a negligence standard, he did not prove a state law claim for battery based on use of unnecessary or excessive force, and his claims that he was denied medical treatment were not supported by the credible evidence, which established that plaintiff was evaluated by medical staff the day of the OC spray incident. Defendants argue that the ODRC employees named as defendants in this case are in privity with the ODRC, which was named as defendant in the Court of Claims action, and that the state court judgment precludes the possibility of any judgment in this case. Defendants contend that plaintiff waived his claims

---

[5] The case documents can be found at https://ohcourtportal.tylerhost.net/Portal/.

against the individual defendants under the *Leaman* doctrine by filing suit against the ODRC in the Ohio Court of Claims based on the same acts and omissions giving rise to this lawsuit.

Under Ohio law, "filing a civil action in the court of claims results in a complete waiver of any cause of action, based on the same act or omission, that the filing party has against any officer or employee. . . ." Ohio Rev. Code § 2743.02(A)(1). The waiver applies to federal causes of actions as well as causes of action based on state law. *Savage v. Gee*, 665 F.3d 732, 738 (6th Cir. 2012) ("federal damages claims against state officials are barred where claims based on the same act or omission were previously raised in the Court of Claims. . . .") (citing *Leaman v. Ohio Dept. of Mental Retardation & Dev. Disabilities,* 825 F.2d 946 (6th Cir. 1987) (en banc)). *See also Thomson v. Harmony*, 65 F.3d 1314, 1318 (6th Cir. 1995) (explaining that the Court of Claims Act established a "*quid pro quo*, in which the state consents to be sued in exchange for a plaintiff's waiver of claims against the state's employees").

A plaintiff's choice to pursue relief in the Court of Claims must be "knowing, intelligent, and voluntary." *Asley v. Cooper*, No. 1:16-cv-338, 2017 WL 4857605, at *3 (S.D. Ohio Oct. 25, 2017) (Report and Recommendation), *adopted sub nom. Easley v. Cooper*, 2017 WL 5594125 (S.D. Ohio Nov. 21, 2017) (quoting *Leaman*, 825 F.2d at 956). In *Leaman*, the plaintiff was held to have made a knowing and voluntary waiver of her federal cause of action because she was represented by counsel at the time the Court of Claims action was filed. *Id.* ("The finding that the waiver was 'knowing, intelligent, and voluntary' presumably rests upon the fact that Ms. Leaman was represented by competent counsel when she filed her action in the Court of Claims, and counsel must be presumed to have known what the Court of Claims Act said. Under the circumstances of this case, we consider this an adequate foundation for the finding of voluntariness."). However, "this presumption does not automatically apply to pro se litigants

and district courts must make a factual determination as to whether a pro se litigant knowingly, intelligently, and voluntarily waived federal claims when filing suit in the Ohio Court of Claims." *Id.* (citing *Kajfasz v. Haviland*, 55 F. App'x 719, 722 (6th Cir. 2003)). A knowing and voluntarily waiver of the right to proceed with federal claims when filing suit in the Ohio Court of Claims has been found when the pro se litigant has extensive prior litigation experience. *Id.* (citing *Easley v. Bauer*, No. 1:07-cv-37, 2008 WL 618642, at *3 (S.D. Ohio Feb. 29, 2008) (barring federal claims under *Leaman* because the pro se plaintiff was "an experienced litigant" who had filed as many as ten other pro se federal civil actions, including one in which he presented evidence and arguments in a jury trial); *Williams v. Smith*, No. 2:05-cv-845, 2006 WL 2192470, at *10-11 (S.D. Ohio Aug. 1, 2006) (dismissing federal claims under *Leaman* because the pro se plaintiff had been involved in at least three previous lawsuits and demonstrated "an above-average understanding of the law for a pro se litigant"); *Brooks v. McCoy*, No. 1:15-cv-39, 2015 WL 4538512, at *4 (S.D. Ohio July 27, 2015) (same)).

Ohio Rev. Code § 2743.02(A)(1) provides an exception to the waiver rule when an employee's actions were "manifestly outside the scope of [their] office or employment or [they] acted with malicious purpose, in bad faith, or in a wanton or reckless manner." *Turker v. Ohio Dept. of Rehabilitation and Corrections*, 157 F.3d 453, 458 (6th Cir. 1998) (citing Ohio Rev. Code § 2743.02(A)(1)). The determination as to whether the employee's actions were "*ultra vires* or malicious is to be made exclusively by the Ohio Court of Claims." *Id.* (citing Ohio Rev. Code § 2743.02(F); *Thomson*, 65 F.3d at 1318 n.5; *Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989)). The Court of Claims has "exclusive original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity." Ohio Rev. Code § 2743.02(F). If the Ohio Court of Claims determines the employee's actions fit the exception, the

waiver of all claims which generally results from the filing in the Court of Claims is void. Ohio Rev. Code § 2743.02(A)(1).

Here, defendants argue that by filing his case in the Ohio Court of Claims on June 24, 2016, plaintiff made a knowing and voluntarily waiver of any claims arising from the OC spray incident on October 9, 2015, including his claims of deliberate indifference to his medical needs related to the incident. Defendants argue that under *Leaman* and its progeny, plaintiff is barred from raising the claims he brought or could have brought in the Ohio Court of Claims based on those allegations. Plaintiff does not address defendants' waiver argument and does not dispute that he presented the same allegations to the Ohio Court of Claims that he raises in this Court in connection with the OC spray incident on October 9, 2015. A comparison of the two complaints shows that plaintiff makes the same allegations related to his October 9, 2015 claims in this case that he litigated in the Ohio Court of Claims. Thus, plaintiff has waived his claims based on the October 9, 2015 incident by filing suit in the Court of Claims.

Further, the Court finds based on plaintiff's prior litigation experience that the waiver of his claims was knowing, intelligent and voluntary. *See Easley*, 2008 WL 618642, at *3; *Williams*, 2006 WL 2192470, at *10-11; *Brooks*, 2015 WL 4538512, at *4. Plaintiff has filed four other federal prisoner civil rights lawsuits prior to this case. *See, e.g., Terry Tyrone Pullen, Jr. v. Mainner, et al.,* Case No. 1:14-cv-00223 (S.D. Ohio March 12, 2014) (Barrett, J.; Bowman, M.J.); *Terry Tyrone Pullen, Jr. v. Cool, et al.,* Case No. 1:16-cv-00515 (S.D. Ohio May 2, 2016) (Barrett, J.; Litkovitz, M.J.); *Terry Tyrone Pullen, Jr. v. SOCF Mail Room, et al.,* Case No. 1:17-cv-00017 (S.D. Ohio January 9, 2017) (Dlott, J.; Litkovitz, M.J.); *Terry Tyrone Pullen, Jr. v. C/O Lisa Howard*, Case No. 2:14-cv-00104 (S.D. Ohio January 29, 2014) (Sargus, J.; Deavers, M.J.). Plaintiff also pursued an appeal in one of those cases. *See Terry Tyrone Pullen, Jr. v.*

*Mainner*, Case No. 1:14-cv-00223 (Docs. 124-130). In addition, plaintiff filed two cases in the Ohio Court of Claims before filing the complaint arising from the October 9, 2015 incident in that court. *See Terry Tyrone Pullen, Jr. v. ODRC*, Case No. 2015-00259 (Ct. of Claims of Ohio 3/26/2015); *Terry Tyrone Pullen, Jr. v. ODRC*, Case No. 2015-00168 (Ct. of Claims of Ohio 9/6/2015). Plaintiff does not deny that by filing his actions in the Court of Claims, he knowingly and voluntarily waived any claims presented in the Court of Claims actions. Thus, plaintiff has waived his claims against defendants Combs, Bailey, Sergeant Felts, Oppy, Shaw and Hart arising out of the October 9, 2015 OC spray incident.

**ii. Excessive force claims**

Defendants contend that plaintiff's excessive force claims should be dismissed because the facts alleged in the complaint do not indicate that both the objective and subjective components of an Eighth Amendment claim are satisfied for each of the three incidents of excessive force at issue: (1) the October 9, 2015 incident allegedly perpetrated by defendant Combs; (2) the November 10, 2015 incident allegedly perpetrated by defendants Bear, Sergeant Felts and Ms. Felts; and (3) the October 30, 2015 incident involving defendants Shaw and Sergeant. Felts. (Doc. 29 at 13-19). Because plaintiff has waived his claims related to the October 9, 2015 incident, only the remaining two incidents are addressed below. (Doc. 29 at 14-19).

A convicted prisoner's right to be free from the use of excessive force by prison officials is governed by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). An Eighth Amendment claim has both objective and subjective components. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013)). The subjective component focuses on "whether force was applied in a good faith effort to maintain or

restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson v.*

*McMillian*, 503 U.S. 1, 7 (1992)). In making this inquiry, the Court should consider the need for

the use of force, the relationship between that need and the type and amount of the force used,

the threat reasonably perceived by the official, the extent of the injury inflicted, and "any efforts

made to temper the severity of a forceful response." *See Hudson*, 503 U.S. at 7; *Whitley*, 475

U.S. at 321. The inmate is not required to suffer a serious injury, but the extent of his injuries

may be considered in determining whether the force used was wanton and unnecessary. *Hudson*,

503 U.S. at 7-8.

The objective component requires the "pain inflicted to be 'sufficiently serious'" to

offend "contemporary standards of decency." *Cordell*, 759 F.3d at 580 (quoting *Williams v.*

*Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Hudson*, 503 U.S. at 8). "While the extent of a

prisoner's injury may help determine the amount of force used by the prison official, it is not

dispositive of whether an Eighth Amendment violation has occurred." *Id.* at 580-81 (citing

*Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)). "When prison officials maliciously and sadistically

use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or

not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical

punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of

injury." *Id.* at 581 (quoting *Hudson*, 503 U.S. at 9).

At this stage in the proceedings, the Court finds that plaintiff has pled sufficient facts to

satisfy both the objective and subjective elements of an Eighth Amendment excessive force

claim for the October 30, 2015 and November 10, 2015 incidents.

### a. October 30, 2015 incident

The complaint alleges that defendants Shaw and Sergeant Felts responded to plaintiff's cell on October 30, 2015, after plaintiff began banging on his cell door to get the nurse's attention. According to plaintiff, Sergeant Felts asked why he was making noise and told plaintiff he was not getting his medication. Plaintiff alleges that he informed Felts that plaintiff would write him, his "funny built" wife Ms. Felts, and Lieutenant Sammons up for failing to permit plaintiff to attend his October 14, 2015 RIB hearing. Plaintiff asserts that Shaw then told Sergeant Felts that he believed plaintiff needed a cell search, and Felts told plaintiff to get his suicide smock on and cuff up. Plaintiff alleges that as he took off the suicide cover he was wrapped in and while naked, Shaw opened the food hatch, Felts sprayed him with a fogger can of OC spray through the hatch, Shaw closed the hatch, and both officers walked away. Plaintiff alleges that as a result of being sprayed, his eyes and body began to burn and he struggled to breathe. (*Id.* at 28-30).

Defendants argue that plaintiff's allegations do not satisfy the subjective or objective component of an excessive force claim under the Eighth Amendment. Defendants cite to several pepper spray cases to support their argument that "courts have approved the application of chemical agents on inmates who refuse to follow reasonable commands." (Doc. 29 at 15-16) (citing *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. Mar. 12, 2004) (summary judgment was properly granted where the videotape showed the plaintiff "disobeyed repeated direct orders prior to the use of pepper spray"); *Siggers v. Renner*, No. 01-4067, 2002 WL 847986, at *1 (6th Cir. 2002) (summary judgment was properly granted in favor of defendants who used pepper spray on the plaintiff because they reasonably perceived the plaintiff's refusal to leave a strip cage as a threat to prison security); *Easley v. Little*, No. 1:14-cv-891, 2016 WL 4006676, at *7

(S.D. Ohio June 28, 2016) (Report and Recommendation) (summary judgment was warranted where video evidence showed the defendant's use of force was one burst of OC spray to the right side of the plaintiff after he failed to comply with orders, as witnessed by additional corrections staff), *adopted*, 2016 WL 3974585 (S.D. Ohio July 25, 2016); *Iacovone v. Wilkinson*, No. 2:03-cv-652, 2007 WL 490160, at *8 (S.D. Ohio Feb. 8, 2007) (Report and Recommendation) (summary judgment in favor of the defendants was warranted where the videotape evidence showed the plaintiff refusing to comply with direct orders), *adopted*, 2007 WL 756649 (S.D. Ohio Mar. 7, 2007); *Thompson v. Ohio Dep't of Rehab & Corr.*, No. 1:14-cv-935, 2017 WL 1102810, at *6 (S.D. Ohio Feb. 1, 2017) (Report and Recommendation) (summary judgment in favor of the defendant officer was appropriate where the record evidence showed the plaintiff refused to comply with several direct orders and the defendant deployed pepper spray to prevent the plaintiff from spitting on him), *adopted*, No. 1:14-cv-935, 2017 WL 1092290 (S.D. Ohio Mar. 23, 2017)). Defendants argue that officers "may deploy pepper spray when there is a credible threat than an inmate may attempt to project bodily fluids at officers." (*Id.*, citing *Thompson*, 2017 WL 1102810, at *6). They also contend that plaintiff does not state that Shaw personally engaged in any unlawful conduct with respect to the OC spray. (Doc. 29 at 19).

In addition to these prior decisions, defendants rely on one exhibit attached to the complaint to support their argument that Sergeant Felts "did not deploy OC spray maliciously to cause Plaintiff pain" but instead did so "in a good faith effort to maintain or restore discipline." (*Id.* at 18). The exhibit is the RIB's disposition of a conduct charge against plaintiff. (Doc. 1-2 at 106). Defendants allege that the RIB's disposition, which was made after the RIB reviewed the conduct report and the DVR footage of the incident, shows that Sergeant Felts deployed OC spray because plaintiff attempted to spit on him; therefore, it conclusively demonstrates that Felts

was not "malicious or sadistic in his use of OC spray on Plaintiff in response to Plaintiff attempting to spit on him."[6] (*Id.* at 18).

The complaint states a claim for relief against defendants Shaw and Sergeant Felts for using OC spray against plaintiff on October 30, 2015. The case law defendants rely on does not support a finding in defendants' favor at this juncture. Each of those cases was decided at the summary judgment stage and the Court in each case considered evidence, including video footage, to determine whether the plaintiff was entitled to pursue his claim. This case is before the Court on a Rule 12(b)(6) motion to dismiss, and the Court is restricted to the allegations of the complaint and those exhibits that are properly considered in connection with a Rule 12(b)(6) motion in resolving defendants' motion. Accepting the factual allegations of the complaint as true, plaintiff has alleged sufficient facts to support a finding that defendants Felts and Shaw's use of OC spray was unnecessary and was not applied in a good-faith effort to maintain or restore discipline but rather to cause harm, thus satisfying the subjective component of an Eighth Amendment excessive force claim. *See Hudson*, 503 U.S. at 7; *Williams*, 631 F.3d at 384 (plaintiff stated a valid excessive force claim when he "allege[d] that, when instructed to 'pack up,' he inquired, 'What for, sir?,' at which point an 'assault team' entered the cell and used a chemical agent on him."); *Roberson v. Torres*, 770 F.3d 398, 406-07 (6th Cir. 2014) (denying qualified immunity at the summary judgment stage to defendants who allegedly sprayed an inmate with a chemical agent while he was sleeping).

The exhibit defendants rely on is not determinative of plaintiff's claim at the pleading stage. Rather, the Court construes the RIB disposition as a disputed document that cannot be

---

[6] Although defendants rely on these arguments and case citations to show the objective component of plaintiff's excessive force claim is not satisfied, these particular arguments and citations actually go to whether the subjective component of plaintiff's excessive force claim is satisfied; i.e., "whether the offending, non-penal conduct [was] wanton." *Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010); *Jennings*, 93 F. App'x at 725 (finding "the force used was applied in a good-faith effort to maintain or restore discipline, not to maliciously cause pain").

considered at this juncture. The parties dispute the relevance of the RIB's disposition of the conduct report. The RIB determined that plaintiff "did attempt to spit on" Sergeant Felts. (Doc. 1-2 at 106). Plaintiff pled not guilty to the conduct charge and alleges in the complaint that he was preparing to put his suicide smock on when he was sprayed with OC spray, and Shaw lifted up his food hatch and immediately shut it so that the OC spray could be deployed. In response to the motion to dismiss, plaintiff alleges that he was behind a plexiglass cell front when Shaw opened and closed the food hatch and at no time did he attempt to spit at Felts. (Doc. 37 at 20). Thus, plaintiff's version of the incident differs from what is reflected in the RIB's findings. Because the contents of the exhibit defendants rely on is disputed, the Court cannot construe the exhibit in defendants' favor at the pleading stage and determine on a motion to dismiss whose version of the facts is supported by the record. When deciding defendants' motion to dismiss, the Court must consider only the complaint's allegations that defendant Shaw opened the food tray hatch, Sergeant Felts sprayed plaintiff with OC spray while he was naked and in the process of putting on his suicide smock, and Shaw then shut the hatch. These allegations are sufficient to satisfy the subjective component of an Eighth Amendment claim.

Plaintiff has also pled sufficient facts to satisfy the objective component of an Eighth Amendment excessive force claim. Plaintiff has alleged that as a result of the OC spray application, he suffered burning eyes and difficulty breathing. (Doc. 1-2 at 30). Defendants allege that these symptoms are no more than the "discomfort in the ordinary fashion of persons exposed to pepper spray," and as such plaintiff's allegations do not state an excessive force claim. (Doc. 29 at 15). However, the Supreme Court has consistently rejected the notion that a serious injury is a threshold requirement for stating an excessive force claim. *Wilkins*, 559 U.S. at 34 (citing *Hudson*, 503 U.S. at 7). Here, plaintiff's allegation that he suffered burning eyes

and difficulty breathing after defendant Combs sprayed him with OC spray is sufficient to satisfy the objective component of an excessive force claim under the Eighth Amendment. *See Williams*, 631 F.3d at 384 (finding inmate's allegations of coughing and shortage of oxygen when coupled with allegations of a "violent extraction" sufficient to satisfy the objective component of an Eighth Amendment excessive force claim). *Cf. Jennings*, 93 F. App'x at 724 (explaining that plaintiff failed to show more than a *de minimis* physical injury after being sprayed with OC spray when "[a]t no time was [plaintiff] in respiratory distress of any sort; he merely was uncomfortable in the ordinary fashion of persons exposed to pepper spray.").

Thus, construing the facts alleged by plaintiff in the light most favorable to him as the Court must on a motion to dismiss, plaintiff's complaint states a claim for relief under the Eighth Amendment against defendants Shaw and Sergeant Felts for excessive force based on the October 30, 2015 incident. Defendants Felts and Shaw are not entitled to qualified immunity on plaintiff's Eighth Amendment excessive force claim at this juncture in connection with that OC spray incident. Government officials performing discretionary functions are generally shielded from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). "In determining whether qualified immunity applies, the court employs a two-part test, asking (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) (citations and quotation and alteration marks omitted). Plaintiff's complaint states a plausible claim for relief under the Eighth Amendment against defendants Shaw and Sergeant Felts related to the October 30, 2015 incident. Further, the Sixth Circuit decisions holding that

the use of OC spray against a compliant prisoner violates the Eighth Amendment predate the incidents at issue her. *See, e.g., Roberson*, 770 F.3d at 407 ("we agree that using a chemical agent in an initial attempt to wake a sleeping prisoner [who claimed he obeyed a corrections officer's order], without apparent necessity and in the absence of mitigating circumstances, violates clearly established law."). Defendants' request for qualified immunity should be denied as to this claim.

### b. *November 10, 2015 incident*

Plaintiff alleges that after a RIB hearing on November 10, 2015 related to the October 30, 2015 incident, Sergeant Bear came to wheel him to the infirmary because he was on a hunger strike. (Doc. 1-2 at 34). Plaintiff alleges that en route to the infirmary, Bear, Ms. Felts and Sergeant Felts used excessive force against him. (*Id.*). Plaintiff alleges that Ms. Felts asked Sergeants Bear and Felts if she looked "funny built," after which they wheeled him out of the view of the camera and Ms. Felts slapped him on the right side of his face, Sergeant Felts slapped him twice on the left side of his face, and Sergeant Bear punched him in the back of his head. (*Id.*). Plaintiff alleges in his response to the motion to dismiss that defendants Bear, Ms. Felts and Sergeant Felts acted together to use excessive force against him. (Doc. 37 at 21). Plaintiff alleges that Ms. Felts first slapped him, Sergeant Felts then slapped him three times, and Bear then punched him in the back of the head after wheeling him off camera. (Doc. 37 at 21-22). Plaintiff claims that he later gave a sick call slip to RN John Doe, who threw it away, and that he notified Linnea Mahlman and Larry Greene of the assault in kites filed on the date of the incident. (*Id.*).

Defendants argue that plaintiff's allegations, accepted as true, do not state a claim for relief under the Eighth Amendment because plaintiff alleges no injury. (Doc. 29 at 17, citing

*Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (citing *Hudson*, 503 U.S. at 9). Defendants also argue

that plaintiff makes inconsistent allegations about the incident in the complaint because contrary

to his allegations, his kite to Mahlman makes no mention of the incident. (Doc. 29 at 17, citing

Doc. 1-2 at 36, 99-101).

A "malevolent touch by a prison guard" does not necessarily give rise to a federal cause

of action in every case. *Wilkins*, 559 U.S. at 38 (quoting *Hudson*, 503 U.S. at 9). "An inmate

who complains of a 'push or shove' that causes no discernible injury almost certainly fails to

state a valid excessive force claim." *Hudson*, 503 U.S. at 9. *See also Askew v. Long*, No. 4:09-

cv-1678, 2010 WL 419434, *1 (N.D. Ohio Jan. 29, 2010) (complaint alleging that the defendant

slapped the plaintiff in the face did not state an excessive force claim under the Eighth

Amendment because the plaintiff did not allege more than *de minimis* force and the complaint

contained no indication of an injury) (citing *Leary v. Livingston County*, 528 F.3d 438, 443 (6th

Cir. 2008) (strike in the back of the neck was *de minimis* because there was nothing "to indicate

that the encounter rose above a negligible force or caused anything more than a trifling injury")).

On the other hand, the Sixth Circuit has expressly acknowledged that a "slap to the face" can

give rise to an excessive force claim under the Eighth Amendment. *Carico v. Benton, Ireland,

and Stovall*, 68 F. App'x 632, 637 (6th Cir. 2003) ("Carico can clearly claim excessive force

against Minnifield [a defendant who was not a party to the appeal] for the slap to the [plaintiff's]

face").

Plaintiff's allegations about defendants' use of force on November 10, 2015, accepted as

true, are sufficient to state a claim under the Eighth Amendment. Construing the facts alleged in

the complaint in the light most favorable to plaintiff, defendants Bear, Ms. Felts and Sergeant

Felts maliciously attacked plaintiff by slapping and punching him in retaliation for insulting Ms.

Felts. Plaintiff submitted a sick call request but an unidentified nurse threw it away. It is not clear from the complaint whether defendants exerted more than *de minimis* force on plaintiff and whether plaintiff sustained any injury as a result of their slaps and punch. Further development of the record is required to resolve these issues. At the pleading stage, plaintiff's allegations that defendants Bear, Ms. Felts and Sergeant Felts maliciously slapped and punched him and that he sought medical attention as a result are sufficient to state a plausible claim for relief under the Eighth Amendment against these defendants for excessive force based on the November 10, 2015 incident. Defendants are not entitled to qualified immunity from liability on plaintiff's claim at this point because the law was clearly established on the date of the incident.

### iii. Failure to protect

Plaintiff alleges that defendants Shaw and C/O Clere violated his Eighth Amendment rights by failing to protect him from an assault by inmate Peyton on October 11, 2015. (Doc. 1-2 at 12-18). The Eighth Amendment's prohibition on cruel and unusual punishment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *See Amick v. Ohio Dept. of Rehab. & Correction*, 521 F. App'x 354, 363 (6th Cir. 2013); *Enyart*, 2017 WL 499085, at *2 (citing *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998)). A claim for violation of the duty to protect under the Eighth Amendment has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 835-38 (1994). To satisfy the objective component, the plaintiff must show that absent reasonable precautions, he was exposed to a substantial threat of serious harm. *Id*. at 837. To satisfy the subjective component, the prisoner must show that (1) "the official being sued subjectively perceived facts from which to infer a substantial risk to the prisoner," (2) the official "did in fact draw the inference," and (3) the official "then disregarded that risk." *Richko v. Wayne County, Mich.*, 819 F.3d 907, 915-16 (6th

Cir. 2016) (citing *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014) (quoting

*Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). *See also Enyart*, 2017 WL 499085, at

*2 ("the officials must be aware of a specific threat to either the plaintiff or to a class of persons

to which the plaintiff belongs, and that threat must be substantiated by objective evidence, not

the inmate's subjective fear") (citation omitted)).

Plaintiff alleges in the complaint that inmate Peyton threatened him while defendant

Shaw was escorting plaintiff to sick call, Shaw enabled Peyton to attack plaintiff by putting

Peyton's handcuffs on loosely, Shaw did nothing to protect plaintiff from the attack but instead

sprayed plaintiff with OC spray during the attack, and Shaw did not help to pull Peyton off of

plaintiff until after Peyton had slammed plaintiff's head against the concrete floor repeatedly and

had pushed his thumb into plaintiff's eye socket. (Doc. 1-2 at 13-18). These allegations are

sufficient to state a claim for relief against defendant Shaw for failing to protect plaintiff from

violence at the hands of another inmate. Defendant Shaw is not entitled to qualified immunity

on this claim at the pleading stage because the law was clearly established on the date of the

alleged incident. Plaintiff's claim against Shaw based on the October 11, 2015 incident should

not be dismissed.

### iv. Deliberate indifference to plaintiff's medical needs

Defendants contend that plaintiff's claims of deliberate indifference to his medical needs

should be dismissed because the facts alleged in the complaint do not show that plaintiff was

deprived of his rights under the Eighth Amendment in connection with the claimed instances of

deliberate indifference at issue here. (Doc. 29 at 22-34). These are his clams that (1) defendants

Bailey, Sergeant Felts, Shaw and Unit Manager Oppy refused to take plaintiff to the infirmary to

be decontaminated after Combs sprayed him with OC spray on October 9, 2015; (2) following

the assault by inmate Peyton on October 11, 2015, defendant Nurse Hill refused to send plaintiff

to the infirmary for medical treatment and defendant Haywood refused to give plaintiff the

opportunity to take a shower to wash blood and OC spray off of his body; and (3) on October 15,

2015, defendant RN Hart refused to address plaintiff's medical concern about the October 9,

2015 incident when inmate Webb spit blood and saliva on plaintiff. (Doc. 29 at 13-19). Only

the claims against defendants Hill and Haywood arising out of the October 11, 2015 incident are

not barred by the *Leaman* doctrine and must be considered on their merits.

In order to state a claim for relief under 42 U.S.C. § 1983 for a denial of medical care, a

prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference

to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Comstock*, 273

F.3d at 702. Plaintiff must allege facts showing that the "alleged mistreatment was objectively

serious," and that prison officials "subjectively ignored the risk to the inmate's safety."

*Rhinehart v. Scutt*, 509 F. App'x 510, 513 (6th Cir. 2013) (citing *Bishop v. Hackel*, 636 F.3d 757,

766 (6th Cir. 2011)). Plaintiff must allege that prison officials have denied his reasonable

requests for medical care when such need is obvious and when he is susceptible to undue

suffering or threat of tangible residual injury. *Byrd v. Wilson*, 701 F.2d 592, 594-95 (6th Cir.

1983); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976); *see also Estelle*, 429 U.S. at 106.

Allegations of negligence in diagnosing or treating medical conditions are not actionable under §

1983. *Estelle*, 429 U.S. at 106; *Byrd*, 701 F.2d at 595 n.2; *Westlake*, 537 F.2d at 860 n.5. A

prison official may be held liable under the Eighth Amendment for denying humane conditions

of confinement, including proper medical care, only if "he knows that inmates face a substantial

risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."

*Farmer*, 511 U.S. at 847.

In addition, the Sixth Circuit has held that a plaintiff states a deliberate indifference claim "when he alleges that prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering." *Brown v. Perez*, No. 16-2558, 2017 WL 3378994, at *3 (6th Cir. Apr. 17, 2017) (holding that while the plaintiff satisfied the objective prong of a deliberate indifference claim by alleging a skin injury from exposure to a chemical agent, the plaintiff failed to satisfy the subjective prong of a deliberate indifference claim because he did not set forth facts demonstrating that the defendants disregarded a substantial risk of harm of which they were aware) (quoting *Westlake*, 537 F.2d at 860).

Plaintiff alleges that defendants Nurse Hill and Haywood showed deliberate indifference to his medical needs following the assault by inmate Peyton on October 11, 2015. Plaintiff alleges that when Nurse Hill checked him following the assault, he had blood running down his face onto his shirt and he asked if he would be taken to the infirmary for further evaluation. (*Id.* at 18). Hill told him only to sign up for nurse sick call and take a shower, and she gave him five packs of Tylenol. Plaintiff does not allege any additional facts to show that he suffered an injury that required further evaluation or treatment. Thus, plaintiff has failed to state a claim for deliberate indifference to his medical needs against Nurse Hill. Defendant Hill is entitled to qualified immunity on plaintiff's deliberate indifference claim against her.

Plaintiff has failed to state a claim for deliberate indifference to his medical needs against defendant Haywood. Plaintiff claims he asked defendant Haywood for the opportunity to take a shower to wash his "head injury" and to wash OC spray off, but Haywood said he would not wait for plaintiff to do that if he wanted to make a statement and get a picture of his injuries. (*Id.*). Plaintiff does not allege that he suffered any pain or injury as a result of the inability to

take a shower to wash off the blood and OC spray before giving a use of force statement. There are no allegations in the complaint that plaintiff suffered any symptoms as a result of contact with the OC spray during the alleged assault by inmate Peyton. Plaintiff adds information in the response to the motion to dismiss by alleging that he "had to suffer the burning caused by the pepper spray setting on his skin all night." (Doc. 37 at 23-24). However, even if this statement were accepted as true and properly considered in conjunction with the allegations of the complaint, it is insufficient to satisfy the objective component of an Eighth Amendment claim for deliberate indifference to serious medical needs. *See Jennings*, 93 F. App'x at 724 (explaining that the plaintiff failed to show more than a *de minimis* physical injury after being sprayed with pepper spray because "[a]t no time was [plaintiff] in respiratory distress of any sort; he merely was uncomfortable in the ordinary fashion of persons exposed to pepper spray."); *Catt v. Brown*, No. 1:17-cv-513, 2017 WL 2991714, at *4 (W.D. Mich. July 14, 2017) (dismissing the plaintiff's deliberate indifference claim at the motion to dismiss stage and explaining that the "[p]laintiff allege[d] nothing more than the fact that he was sprayed with pepper spray. He [did] not allege any particular susceptibility to the spray nor [did] he allege any particular resulting injury. [He] alleged 'no more than the normal after effects of being exposed to gas and/or chemical agents.'"). Under the clearly established law, Haywood is entitled to qualified immunity on plaintiff's claim against him. This claim should be dismissed.

### v. Conclusion

Plaintiff has waived his Eighth Amendment claims against defendants Combs, Bailey, Sergeant Felts, Oppy, Shaw and Hart for their alleged acts and omissions on October 9, 2015 and October 15, 2015. Plaintiff has not stated a plausible claim for relief under the Eighth Amendment against defendants Hill and Haywood for deliberate indifference to his medical

needs in connection with the October 11, 2015 incident. Plaintiff has stated plausible claims for relief under the Eighth Amendment against defendant Shaw for failure to protect in connection with the alleged assault by inmate Peyton on October 11, 2015, against defendants Bear, Ms. Felts and Sergeant Felts for excessive force based on the November 10, 2015 incident, and against defendants Shaw and Sergeant Felts for excessive force related to the October 30, 2015 OC spray incident.

### B. Defendant Wamsley's motion to dismiss plaintiff's Eighth Amendment deliberate indifference claim (Doc. 44) should be denied.

Plaintiff brings an Eighth Amendment claim against Rebecca Wamsley for deliberate indifference to his medical needs. Plaintiff alleges in the complaint that on October 30, 2015, defendant Jane Doe, who plaintiff subsequently identified as Wamsley, refused to dispense plaintiff's morning medication for seizures and refused to treat plaintiff for choking and breathing symptoms caused by OC spray exposure. (Doc. 1-2 at 28, 30, 32; Doc. 37 at 12-14). Plaintiff alleges that after Sergeant Felts had deployed OC spray on that date, Wamsley returned to his cell and asked if he was injured but plaintiff could not answer because he was still choking from the fumes and was unable to breathe. Plaintiff alleges that Wamsley said he must be alright and then left his cell, and he was never allowed to decontaminate.

Defendant Wamsley moves to dismiss plaintiff's claim against her because she contends he cannot satisfy either the objective or subjective component of a deliberate indifference claim. Wamsley argues that the complaint includes no allegations to suggest she was aware that plaintiff was prone to a serious health risk if she did not give him medical attention on October 30, 2015. Further, Wamsley asserts that plaintiff cannot show he had a "sufficiently serious" medical need because he does not allege that he suffered any pain or injury as a result of either not receiving his medication or being left in his cell after being sprayed with OC spray. She

argues that because plaintiff cannot satisfy either component of an Eighth Amendment deliberate indifference claim, she is entitled to qualified immunity from civil liability for damages.

In accordance with the case law discussed *supra*, plaintiff has not stated a claim for deliberate indifference to his medical needs insofar as he claims Wamsley did not dispense his seizure medication to him on one date. Plaintiff does not allege facts to show that he suffered any pain or injury as a consequence of missing one dose of his medication. Plaintiff's allegations are sufficient to state a claim for deliberate indifference to his medical needs against defendant Wamsley with respect to OC spray exposure and resulting symptoms. Accepting those allegations as true, Wamsley observed plaintiff choking and having difficulty breathing when she came to his cell after the OC spray incident. It is reasonable to infer that Wamsley was aware based on her personal observations that plaintiff required medical attention. Further, plaintiff's allegations of choking and trouble breathing are sufficient to satisfy the objective component of a deliberate indifference claim at the pleading stage. *See Williams*, 631 F.3d at 384 (finding inmate's allegations of coughing and shortage of oxygen when coupled with allegations of a "violent extraction" sufficient to satisfy the objective component of an Eighth Amendment excessive force claim); *cf. Jennings*, 93 F. App'x at 724 (the plaintiff failed to show more than a *de minimis* physical injury after being sprayed with OC spray when "[a]t no time was [plaintiff] in respiratory distress of any sort; he merely was uncomfortable in the ordinary fashion of persons exposed to pepper spray."). Defendant Wamsley is not entitled to qualified immunity on this claim because the law was clearly established on the date of the alleged incident. Defendant Wamsley's motion to dismiss plaintiff's Eighth Amendment claim based on a denial of medical care for OC spray exposure should be denied.

### III. Order to show cause

On November 9, 2017, service was issued for defendant Clere. (Doc. 22). On January 31, 2018, summons were returned unexecuted. (Doc. 31). Proper service of process is required in order for the Court to obtain personal jurisdiction over each defendant. *OJ Distrib., Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345, 353 (6th Cir. 2003). Plaintiff is responsible for having the summons and complaint served upon defendants within the time period allotted by Rule 4(m). Fed. R. Civ. P. 4(c)(1). Fed. R. Civ. P. 4(m) sets forth the Court's obligation when the plaintiff fails to timely complete service of process. The Rule provides, in pertinent part:

> If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. . . .

Fed. R. Civ. P. 4(m). Thus, if plaintiff does not show good cause justifying his failure to timely serve the complaint on defendant Clere, the Court shall either (1) dismiss the complaint without prejudice, or (2) direct that service of process be effected within a specified time. *Greene v. Venatter*, No. 2:13-cv-00345, 2014 WL 559154, *2 (S.D. Ohio February 11, 2014). If plaintiff shows good cause for failing to comply with the 90-day requirement, the Court shall extend the time for service. *Id.*

As of the date of this Order, defendant Clere has not been served with the complaint. Accordingly, plaintiff is hereby notified that the Court proposes to dismiss this action against defendant Clere without prejudice based on plaintiff's failure to serve the complaint on this defendant. Plaintiff must show good cause why this case should not be dismissed against this defendant for failure to serve. Failure to show cause shall result in a recommendation to the District Judge that plaintiff's complaint against defendant Clere be dismissed.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff show cause, in writing, within **twenty (20) days** of the date of this Order, why the complaint should not be dismissed against defendant Clere for failure of service.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Defendants' motion to dismiss (Doc. 29) be **GRANTED** as to: (1) plaintiff's Eighth Amendment claims for excessive force and deliberate indifference to medical needs against defendants Combs, Bailey, Sergeant Felts, Oppy, Shaw and Hart arising out of the October 9, 2015 OC spray incident described in the complaint, including Hart's alleged deliberate indifference on October 15, 2015; and (2) plaintiff's claims for deliberate indifference to his medical needs against defendants Hill and Haywood related to the October 11, 2015 incident. Defendants' motion to dismiss should be **DENIED** as to the following claims for relief: (1) plaintiff's Eighth Amendment claim for failure to protect against defendant Shaw arising out of the October 11, 2015 incident; (2) plaintiff's Eighth Amendment claim for excessive force against defendants Shaw and Sergeant Felts related to the October 30, 2015 OC spray incident; and (3) plaintiff's Eighth Amendment claims for excessive force against defendants Bear, Ms. Felts and Sergeant Felts based on the November 10, 2015 incident.

2. Defendant Wamsley's motion to dismiss (Doc. 44) be **DENIED**.

Date: ___8/15/18___

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TERRY TYRONE PULLEN, JR.,
    Plaintiff,

vs.

MR. COMBS, et al.,
Defendants

Case No. 1:17-cv-255
Barrett, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).