# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TERRY TYRONE PULLEN, JR.,
    Plaintiff,

vs.

CORRECTIONAL OFFICER
MR. COMBS, *et al.*,
    Defendants.

Case No. 1:17-cv-255

Barrett, J.
Litkovitz, M.J.

**REPORT
AND RECOMMENDATION**

    Plaintiff, a former inmate at the Southern Ohio Correctional Facility (SOCF), filed a pro se civil rights complaint under 42 U.S.C. § 1983 against numerous defendants alleging violations of his constitutional rights. The five remaining defendants are SOCF employees or former employees: correctional officer Cody Shaw, secretary Susan Felts, Sergeant Shannon Bear, Sergeant Brian Felts, and nurse Rebecca Wamsley. There are four remaining claims: (1) plaintiff's Eighth Amendment claim for failure to protect against defendant Shaw arising out of an incident on October 11, 2015; (2) plaintiff's Eighth Amendment claim for excessive force against defendants Shaw and Sergeant Felts related to an October 30, 2015 OC spray incident; (3) plaintiff's Eighth Amendment claims for excessive force against defendants Bear, Ms. Felts and Sergeant Felts based on a November 10, 2015 incident; and (4) plaintiff's Eighth Amendment claims for deliberate indifference against defendant Wamsley. (Doc. 54). This matter is before the Court on defendants' motion for summary judgment (Doc. 75) and plaintiff's response in opposition (Doc. 82).

## I. FACTS

### A. October 11, 2015 incident

    Plaintiff alleges the following facts: On October 11, 2015, defendant Shaw came to plaintiff's cell to escort him to the infirmary. (Doc. 82-1, Affidavit of Plaintiff). En route to the

infirmary, plaintiff saw inmate Peyton in the stairwell taking his right hand out of his handcuffs. (*Id.*). Peyton said, "I got your snitching ass now!" Shaw told Peyton, "Not right here . . . the camera can see you coming out your handcuffs." (*Id.*, ¶ 2). Peyton put his hand back in the handcuff, but Shaw did not check to make sure it was secured. Peyton told plaintiff he was going to assault him that day. Shaw then told plaintiff, "You should have never came (sic) out for this sick call so do you want to go back to your cell and deny seeing the nurse?" (*Id.*, ¶ 4). Plaintiff told Shaw that he needed to see the nurse because he could hardly see out of his right eye from a previous OC spray incident. Shaw responded, "Your (sic) going to get what you deserve today!" (*Id.*). Shaw subsequently allowed inmate Peyton to fill out a sick call slip, and when he was finished Shaw put Peyton's handcuffs back on loosely. As Peyton exited the mini-infirmary, he threatened plaintiff by telling him, "Your [sic] dead when you come out of there." (*Id.*, ¶ 5). When plaintiff was in with Nurse Hill, Shaw told her to "[m]ake this quick because this fucker is getting what he deserves today and I'm going to spray the fuck out of him!" (*Id.*, ¶ 6).

Plaintiff states that after he exited the mini-infirmary, he was attacked by Inmate Peyton. Peyton removed his handcuffs and punched plaintiff repeatedly. (*Id.* at 16-17). Shaw did nothing to protect him from the attack, but instead began spraying plaintiff in the face with OC spray. After Peyton slammed plaintiff's head against the concrete floor repeatedly, Shaw told Peyton to stop or he would have to spray him. (*Id.*, ¶ 9). Peyton then pushed his thumb into plaintiff's eye socket before Shaw and Officer Clere finally pulled Peyton off plaintiff. (*Id.*).

Defendant Shaw avers that he had no prior knowledge that Inmate Peyton planned to assault plaintiff. (Doc. 75-5, Shaw Affidavit). He submits DVR footage of the October 11, 2015

incident between Inmate Peyton and plaintiff. Contrary to plaintiff's allegations, the video shows that while both inmates were in the sally port, Inmate Peyton suddenly lunged at plaintiff and threw him to the floor. Officer Shaw responded immediately by spraying Peyton with OC spray. The video shows that Shaw repeatedly attempted to pull Peyton off plaintiff. Another officer arrived on the scene and sprayed both inmates with OC spray. Both officers were then able to pull Peyton off plaintiff. Both inmates were secured and taken out of the sally port. (Doc. 75, Ex. A).[1]

### B. October 30, 2015 incident

Plaintiff states that the following occurred on October 30, 2015: On that morning, defendant nurse Wamsley refused plaintiff his seizure medication. (Doc. 82-1, ¶ 14). Plaintiff states he repeatedly asked Wamsley for his medication but she refused. Plaintiff then began banging on his cell door. He alleges that Sergeant Felts came to his cell and asked why he was making noise. Plaintiff told him he was trying to get a "white shirt" (supervisor) so he could get his medication. Sergeant Felts told plaintiff he was not getting his medication. (*Id.*, ¶ 15). Plaintiff informed Felts that he would write him, his "funny built" wife Ms. Felts, and Lieutenant Sammons up for not permitting plaintiff to attend his October 14, 2015 RIB hearing. (*Id.*). Defendant Shaw, who was present, told Felts, "I believe [plaintiff] needs a cell search!" (*Id.*). Felts told plaintiff to put on his suicide smock and cuff up. As plaintiff took off the cover he was wrapped in and while he was naked, either Shaw or correctional officer Harlow opened the food tray hatch of plaintiff's plexiglass-front cell, and Felts sprayed plaintiff with a fogger can of OC spray through the hatch. Shaw then closed the hatch, and both officers walked away. (*Id.*, ¶ 16).

---

[1] There is no audio on the DVR.

Plaintiff's eyes and body began to burn, he choked, and he struggled to breathe. Nurse Wamsley later returned to plaintiff's cell and asked if he was injured. (*Id.*). Plaintiff states he was still choking from the fumes and struggling to breathe. (*Id.*). Nurse Wamsley said she supposed plaintiff was alright when he could not answer and left his cell. Plaintiff states he was never allowed to decontaminate.

Sergeant Felts avers that on October 30, 2015, he was called to J2 south to respond to plaintiff's beating violently on his cell door and screaming at staff. Felts attempted to calm plaintiff down, then gave plaintiff a direct order to step to the back of his cell for a cell search. As the cell hatch opened to allow officers to apply handcuffs, plaintiff immediately began to spit at Felts and the other responding officers through the food hatch. Felts states he then applied a quick burst of OC spray to protect the officers from being spit at. (Doc. 75-2, Brian Felts Affidavit). Sergeant Felts states that OC spray is an accepted, non-lethal means of controlling unruly inmates. He states he deployed a quick burst of OC spray directed at plaintiff in a good-faith effort to maintain and restore discipline, and not maliciously and sadistically to cause plaintiff harm. (*Id.*).

Officer Shaw avers that on October 30, 2015, he notified Sergeant Felts that plaintiff was causing a disturbance by pounding on the front of his cell where he was on mental health constant watch. When Shaw and Felts arrived at plaintiff's cell, they could hear plaintiff screaming at officers. Felts tried to calm plaintiff down but was unsuccessful. Plaintiff continued to make threats towards Felt and other staff. Felts then opened the cell door hatch and attempted to get plaintiff to comply with a cell search to ensure he did not have any contraband in his cell that he could use to hurt himself. Felts ordered plaintiff to the back of his cell for the

4

officers' safety.  As plaintiff stepped back, he began spitting at the officers when he reached the

middle of the cell and tried to project his saliva through the food hatch.  Sergeant Felts quickly

reacted by deploying OC in the food hatch and closed the hatch for the officers' safety.

Nurse Wamsley avers that she was informed that plaintiff was sprayed with OC spray on

October 30, 2015.  (Doc. 75-6).  Nurse Wamsley states that pursuant to ordinary procedures, she

went to plaintiff's cell for a medical check following the incident.  Upon reaching his cell,

plaintiff did not indicate he was injured or in discomfort.  He also actively refused to be assessed

for medical treatment, which she noted in plaintiff's medical records.  (Doc. 75-12, PAGEID#

751).

### C. November 10, 2015 incident

Plaintiff states that following a Rules Infraction Board hearing on November 10, 2015,

Sergeant Bear, Sergeant Felts and Ms. Felts wheeled plaintiff's wheelchair down the hall and out

of sight of the hall camera.  Plaintiff states that Ms. Felts slapped plaintiff on the right side of his

face, Sergeant Felts slapped plaintiff twice on the left side of his face, and Sergeant Bear

punched plaintiff in the back of his head.  (*Id.* at 32, 34).

Sergeant Felts, Sergeant Bear, and Ms. Felts aver that they have no personal recollection

of the November 10, 2015 incident alleged by plaintiff.  They further aver that they found no

records, no use of force reports, no related grievance documents, no video, no investigation, and

no unreported use of force documents of any alleged event on November 10, 2015.  (Docs. 75-1,

75-2, 75-3).

5

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Id.* at 615; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing

versions of the dispute at trial.'" *Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that the Court holds pleadings of pro se litigants to less stringent standards than formal pleadings drafted by lawyers)); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter his duty to support his factual assertions with admissible evidence. *Maston*, 832 F. Supp.2d at 851-52 (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)). When opposing a motion for summary judgment, a pro se party cannot rely on allegations or denials in unsworn filings. *Id.* (citing *Viergutz*, 375 F. App'x at 485).

## III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED

### A. October 11, 2015 incident

Defendants contend that plaintiff's claim for failure to protect against defendant Shaw is barred by the *Leaman* doctrine because plaintiff filed suit against the Ohio Department of Rehabilitation and Correction in the Ohio Court of Claims based on the same acts and omissions giving rise to this federal lawsuit.

Under Ohio law, "filing a civil action in the court of claims results in a complete waiver of any cause of action, based on the same act or omission, that the filing party has against any officer or employee. . . ." Ohio Rev. Code § 2743.02(A)(1). The waiver applies to federal

7

causes of actions as well as causes of action based on state law. *Savage v. Gee*, 665 F.3d 732, 738 (6th Cir. 2012) ("federal damages claims against state officials are barred where claims based on the same act or omission were previously raised in the Court of Claims") (citing *Leaman v. Ohio Dept. of Mental Retardation & Dev. Disabilities*, 825 F.2d 946 (6th Cir. 1987) (en banc)). *See also Thomson v. Harmony*, 65 F.3d 1314, 1318 (6th Cir. 1995) (explaining that the Court of Claims Act established a "*quid pro quo*, in which the state consents to be sued in exchange for a plaintiff's waiver of claims against the state's employees").

A plaintiff's choice to pursue relief in the Court of Claims must be "knowing, intelligent, and voluntary." *Easley v. Cooper*, No. 1:16-cv-338, 2017 WL 4857605, at *3 (S.D. Ohio Oct. 25, 2017) (Report and Recommendation), *adopted*, 2017 WL 5594125 (S.D. Ohio Nov. 21, 2017) (quoting *Leaman*, 825 F.2d at 956). In *Leaman*, the plaintiff was held to have made a knowing and voluntary waiver of her federal cause of action because she was represented by counsel at the time the Court of Claims action was filed. *Id.* ("The finding that the waiver was 'knowing, intelligent, and voluntary' presumably rests upon the fact that Ms. Leaman was represented by competent counsel when she filed her action in the Court of Claims, and counsel must be presumed to have known what the Court of Claims Act said. Under the circumstances of this case, we consider this an adequate foundation for the finding of voluntariness."). However, "this presumption does not automatically apply to pro se litigants and district courts must make a factual determination as to whether a pro se litigant knowingly, intelligently, and voluntarily waived federal claims when filing suit in the Ohio Court of Claims." *Id.* (citing *Kajfasz v. Haviland*, 55 F. App'x 719, 722 (6th Cir. 2003)). A knowing and voluntarily waiver of the right to proceed with federal claims when filing suit in the Ohio Court of Claims has been

found when the pro se litigant has extensive prior litigation experience. *Id.* (citing *Easley v. Bauer*, No. 1:07-cv-37, 2008 WL 618642, at *3 (S.D. Ohio Feb. 29, 2008) (barring federal claims under *Leaman* because the pro se plaintiff was "an experienced litigant" who had filed as many as ten other pro se federal civil actions, including one in which he presented evidence and arguments in a jury trial); *Williams v. Smith*, No. 2:05-cv-845, 2006 WL 2192470, at *10-11 (S.D. Ohio Aug. 1, 2006) (dismissing federal claims under *Leaman* because the pro se plaintiff had been involved in at least three previous lawsuits and demonstrated "an above-average understanding of the law for a pro se litigant"); *Brooks v. McCoy*, No. 1:15-cv-39, 2015 WL 4538512, at *4 (S.D. Ohio July 27, 2015) (same)).

Ohio Rev. Code § 2743.02(A)(1) provides an exception to the waiver rule when an employee's actions were "manifestly outside the scope of [their] office or employment or [they] acted with malicious purpose, in bad faith, or in a wanton or reckless manner." *Turker v. Ohio Dept. of Rehabilitation and Corrections*, 157 F.3d 453, 458 (6th Cir. 1998) (citing Ohio Rev. Code § 2743.02(A)(1)). The determination as to whether the employee's actions were "*ultra vires* or malicious is to be made exclusively by the Ohio Court of Claims." *Id.* (citing Ohio Rev. Code § 2743.02(F); *Thomson*, 65 F.3d at 1318 n.5; *Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989)). The Court of Claims has "exclusive original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity." Ohio Rev. Code § 2743.02(F). If the Ohio Court of Claims determines the employee's actions fit the exception, the waiver of all claims which generally results from the filing in the Court of Claims is void. Ohio Rev. Code § 2743.02(A)(1).

Here, defendants argue that by filing his case in the Ohio Court of Claims on July 8, 2016

(Doc. 75-9, *Terry Tyrone Pullen, Jr. v. Ohio Department of Rehabilitation and Correction*, Case

No. 2016-00525JD (Ohio Ct. Claims)), plaintiff made a knowing and voluntarily waiver of any

claims arising from the incident with defendant Shaw and Inmate Peyton on October 11, 2015,

including his claim of deliberate indifference to his safety against defendant Shaw related to the

incident. Defendants argue that under *Leaman* and its progeny, plaintiff is barred from raising

the claims he brought or could have brought in the Ohio Court of Claims based on those

allegations. Plaintiff does not address defendants' waiver argument and does not dispute that he

presented the same allegations to the Ohio Court of Claims that he raises in this Court in

connection with the October 11, 2015 incident. A comparison of the two complaints shows that

plaintiff makes the same allegations related to his October 11, 2015 claims in this case that he

litigated in the Ohio Court of Claims. *See* https://ohcourtportal.tylerhost.net/Portal/Home/

WorkspaceMode?p=0 (last accessed on 1/21/20). Thus, plaintiff has waived his federal claims

based on the October 11, 2015 incident by filing suit in the Court of Claims.

Further, the Court finds based on plaintiff's prior litigation experience that the waiver of

his claims was knowing, intelligent and voluntary. *See Easley*, 2008 WL 618642, at *3;

*Williams*, 2006 WL 2192470, at *10-11; *Brooks*, 2015 WL 4538512, at *4. Plaintiff filed four

other federal prisoner civil rights lawsuits prior to this case. *See, e.g., Terry Tyrone Pullen, Jr. v.

Mainner, et al.*, Case No. 1:14-cv-00223 (S.D. Ohio March 12, 2014) (Barrett, J.; Bowman,

M.J.); *Terry Tyrone Pullen, Jr. v. Cool, et al.*, Case No. 1:16-cv-00515 (S.D. Ohio May 2, 2016)

(Barrett, J.; Litkovitz, M.J.); *Terry Tyrone Pullen, Jr. v. SOCF Mail Room, et al.*, Case No. 1:17-

cv-00017 (S.D. Ohio January 9, 2017) (Dlott, J.; Litkovitz, M.J.); *Terry Tyrone Pullen, Jr. v.*

*C/O Lisa Howard*, Case No. 2:14-cv-00104 (S.D. Ohio January 29, 2014) (Sargus, J.; Deavers, M.J.). Plaintiff also pursued an appeal in one of those cases. *See Terry Tyrone Pullen, Jr. v. Maimer*, Case No. 1:14-cv-00223 (Docs. 124-130). In addition, plaintiff filed two cases in the Ohio Court of Claims before filing the complaint arising from the October 11, 2015 incident in that court. *See Terry Tyrone Pullen, Jr. v. ODRC*, Case No. 2015-00259 (Ct. of Claims of Ohio 3/26/2015); *Terry Tyrone Pullen, Jr. v. ODRC*, Case No. 2015-00168 (Ct. of Claims of Ohio 9/6/2015). Plaintiff does not deny that by filing his action in the Court of Claims, he knowingly and voluntarily waived any claims presented in the Court of Claims actions. Thus, plaintiff has waived his claims against defendant Shaw arising out of the October 11, 2015 incident.

### B. October 30, 2015 and November 10, 2015 incidents

Plaintiff's claims relating to the October 30 and November 10, 2015 incidents should be dismissed for his failure to exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies "is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). *See also Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1856 (2016) (the language of the PLRA is "mandatory" and in the absence of exhaustion of available administrative remedies, an inmate "may not bring any action"). "[A] prisoner confined in any jail, prison, or other correctional facility" is barred from filing a lawsuit alleging constitutional violations under 42 U.S.C. § 1983 "or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about

11

prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

"A prisoner's failure to exhaust his intra-prison administrative remedies prior to filing suit 'is an affirmative defense under the PLRA.'" *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting *Jones*, 549 U.S. at 216). "[T]he failure to exhaust 'must be established by the defendants.'" *Id.* (quoting *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011)). Thus, defendants bear the burden of proof on exhaustion. *Id.* Because defendants bear the burden of persuasion on exhaustion, their "initial summary judgement burden is 'higher in that [they] must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Id.* at 455-56 (quoting *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (in turn quoting 11 James William Moore et al., Moore's Federal Practice § 56.13[1], at 56-138 (3d ed. 2000))).

The PLRA exhaustion requirement means prisoners must carry out "proper exhaustion" of a grievance. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "To properly exhaust a claim, prisoners must tak[e] advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford*, 548 U.S. at 90). "Proper exhaustion [further] demands compliance with an agency's deadlines. . . ." *Woodford*, 548 U.S. at 90. Proper exhaustion serves the necessary interest of providing "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint."

*LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009) (citing *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006)).

The procedure established for resolving inmate complaints in Ohio, codified in Ohio Admin. Code § 5120-9-31, involves a three-step process. First, the inmate is required to file an informal complaint with the direct supervisor of the staff member within fourteen days of the event giving rise to the complaint. Ohio Admin. Code § 5120-9-31(J)(1). Second, if the inmate is unsatisfied with the response to his informal complaint, he may file a formal grievance with the inspector of institutional services at his institution of confinement. Ohio Admin. Code § 5120-9-31(J)(2). The inspector of institutional services is required to provide a written response to the inmate's grievance within fourteen calendar days of receipt of the grievance. *Id.* If the inmate is dissatisfied with the response, he may undertake the third step of the grievance process and file an appeal to the office of chief inspector of the Ohio Department of Rehabilitation and Correction ("ODRC") within fourteen days of the disposition of the formal grievance. Ohio Admin. Code § 5120-9-31(J)(3). Grievances against the warden or inspector of institutional services must be filed directly to the office of the chief inspector within thirty calendar days of the event giving rise to the complaint. Ohio Admin. Code § 5120-9-31(L).

The Ohio Admin. Code also provides a special procedure for inmates placed on grievance restriction for misusing or abusing the prison grievance process:

> Limited restrictions may be imposed, only with the approval of the chief inspector, based upon an inmate's abuse or misuse of the inmate grievance procedure. Such a restriction shall be for a stated period of time not to exceed ninety days and subject to extension by the chief inspector if the inmate has not substantially complied with the restriction requirements. Provisions shall be made to ensure that the inmate can pursue issues that could present a substantial risk of physical injury, such as medical concerns, through the inmate grievance procedure. Any inmate subject to a restriction shall be notified in writing. Such notice shall include a clear explanation

of the nature of the restriction, and the length of time of the restriction, (conditional upon their compliance). The notice shall also include an explanation of how they may pursue issues that could present a substantial risk of harm while on restriction.

Ohio Admin. Code 5120-9-31(E).

Defendants argue that plaintiff failed to exhaust his administrative remedies prior to filing his remaining claims against defendants Sergeant Felts, Officer Shaw, Nurse Wamsley, Ms. Felts, and Sergeant Bear. (Doc. 75 at 17-20). Defendants maintain that even though plaintiff was on a grievance restriction, he had alternate channels to file grievances or contact institutional staff in the event of a substantial risk of physical injury or other emergency issues. (*Id.* at 20).

Linnea Mahlman, the inspector of institutional services at SOCF, attests that plaintiff was placed on a grievance restriction for 90 days beginning November 3, 2015 based on his abuse and misuse of the grievance procedure by filing 30 informal complaints and 4 grievances between August 1, 2015 and October 28, 2015. (Mahlman Declaration, Doc. 75-4 at 2, ¶ 7 and Exh. A). Defendants have submitted a copy of the letter sent to plaintiff on October 28, 2015, describing his grievance restriction. (Doc. 75-10). The letter states, in pertinent part:

> For Ninety (90) days, your access to step one of the Inmate Grievance Procedure, Informal Complaint resolution, will be restricted. Provisions shall be made to ensure you can pursue issues that could present a substantial risk of physical injury, such as medical concerns, through the inmate Grievance Procedure. This will be determined by the inspector. . . . You will have unrestricted access to the kite system. Any 'emergencies' you wish to address may be made known either by kite to the institutional inspector, or in person to the institutional staff.

(*Id.*). Thus, although plaintiff was placed on a grievance restriction, he could pursue issues that presented a substantial risk of physical injury, such as medical concerns, through the inmate grievance procedure via a kite to the institutional inspector or in person to institutional staff. Ms. Mahlman attests, "In my review of Plaintiff Pullen's grievance history, I have determined that at no point did Plaintiff attempt to file any documents required for compliance with Ohio's

grievance procedure related to the events between October 11, 2015 and November 10, 2015."
(Doc. 75-4 at 2, ¶ 11, Exh. B).

Plaintiff states that on November 10, 2015, he filed a two-page kite to Inspector Mahlman requesting nine Notification of Grievance forms "due to me being on restriction." (Doc. 82-1, ¶ 19). Plaintiff states that one of the nine forms he requested was for the purpose of filing a complaint against Sergeant Felts "for excessive force used against me on 10-30-15." (*Id.*; Doc. 82-2 at PAGEID# 940). Plaintiff further states that later that evening, he filed a notice of appeal of a Rules Infraction Board conviction within a kite addressed to Mr. Larry Green and also "put him on notice of me being assaulted by Ms. Felts, Sgt. Felts, and Sgt. Bear on 11-10-15." (*Id.*, ¶ 23; Doc. 82-2 at PAGEID# 941). Plaintiff states that same day, he sent a second kite to Inspector Mahlman concerning the incident with Ms. Felts, Sergeant Felts, and Sergeant Bear and requested another Notification of Grievance form. (*Id.*). Plaintiff states that on November 16, 2015, Inspector Mahlman returned one of the kites to him. (*Id.*). Plaintiff states that on November 24, 2015, he sent a kite to Inspector Mahlman informing her that she failed to address his complaint of being assaulted on November 10, 2015, but she claimed plaintiff had made no such complaint. (*Id.*, ¶ 24; Doc. 82-2 at PAGEID# 943).

Even where an inmate is on a grievance restriction, he still must exhaust the administrative remedies that remain available to him. *See, e.g., Sarah v. Unknown Heidtman*, 97 F. App'x 550 (6th Cir. 2004); *Burden v. Price*, 69 F. App'x 675 (6th Cir. 2003). *See also Thompson v. Zwikler*, No. 1:13-cv-167, 2013 WL 5538882, at *5 (W.D. Mich. Oct. 8, 2013) ("A prisoner cannot be permitted to make the MDOC's grievance system unavailable through his own abuse of the system. Any contrary approach would produce the absurd result of

15

encouraging prisoners to abuse the grievance process in order to be placed on grievance restriction and thereby obtain the substantial reward of a quick and easy method of getting around the PLRA's entire statutory exhaustion requirement"). "Courts in this circuit have consistently upheld procedures which modify or restrict the ability of prisoners (who have been deemed abusive grievance filers) to file unfettered grievances." *Odom v. Helton*, No. CIV.A. 12-80, 2013 WL 4012889, at *7 (E.D. Ky. Aug. 6, 2013) (citing *Hartsfield v. Mayer*, No. 95–1411, 76 F.3d 378 (table), 1996 WL 43541, at *2 (6th Cir. Feb. 1, 1996) (unpublished order)); *Brooks v. Yates*, No. 1:09-cv-922, 2012 WL 2115301, at *13-14 (S.D. Ohio Mar. 30, 2012) (concluding that a prisoner's ability to pursue his administrative remedies was not significantly impaired by the temporary and limited-in-scope restrictions imposed based upon his prior abuse and misuse of the grievance procedure) (Report and Recommendation), *adopted*, 2012 WL 2091529 (S.D. Ohio June 11, 2012)).

Here, plaintiff was placed on an "Informal Complaint Resolution (ICR) Restriction" on November 3, 2015, due to his abuse and misuse of the inmate grievance procedure. (Doc. 75-10). This meant that plaintiff was not permitted to file an Informal Complaint Resolution (step one of the grievance process) during his period of restriction. Despite this restriction, plaintiff was still able to file grievances under the special procedure set out in the notice of restriction, and it appears plaintiff filed seven grievances during his period of restriction. (Doc. 75-11 at 7). Plaintiff was not denied the ability to pursue issues that presented a substantial risk of physical injury, such as medical concerns, through the inmate grievance procedure. Plaintiff had unrestricted access to the kite system and was permitted to address emergency issues through a kite to the institutional inspector or in person to institutional staff. (*See* Doc. 75-10: "Access to

the inmate grievance procedure for an 'emergency' issue will be determined by the institutional inspector.").

As to his claims against defendant Nurse Wamsley, plaintiff has neither alleged nor presented any evidence that he exhausted or even attempted to exhaust the prison grievance procedure. In the absence of any such evidence, there is no genuine issue of fact that plaintiff failed to exhaust his administrative remedies on his denial of medical care claim against defendant Wamsley, and summary judgment should be granted for defendant Wamsley.

In addition, plaintiff was notified of his grievance restriction on October 28, 2015, and plaintiff's grievance restriction did not begin until November 3, 2015. Plaintiff therefore could have filed an Informal Complaint Resolution for his October 30, 2015 claims against Nurse Wamsley, Sergeant Felts, and Officer Shaw prior to the start of his grievance restriction on November 3, 2015. Plaintiff made no attempt to pursue his administrative remedies by filing an Informal Complaint Resolution prior to that date. Therefore, he has failed to exhaust his administrative remedies on these claims.

Moreover, plaintiff does not dispute that he did not file a grievance or grievance appeal in accordance with the prison grievance procedure with respect to the October 30, 2015 incident or the November 11, 2015 incident involving defendants Sergeant Felts, Ms. Felts, and Sergeant Bear. Rather, plaintiff states he sent "kites" to the institutional inspector requesting Notification of Grievance forms, suggesting that he attempted to exhaust his remedies in accordance with the grievance restriction. He also alleges he sent a "kite" to Mr. Green in conjunction with the appeal of his Rules Infraction Board conviction. Plaintiff suggests he should be excused from

17

exhausting his administrative remedies because he was not given Notification of Grievance forms in response to his kites.

To be excused from complying with the mandatory PLRA exhaustion requirement, plaintiff must show that the prison's grievance process was unavailable to him in order to proceed on his October 30 and November 10, 2015 claims. *See Ross v. Blake*, 136 S. Ct. 1850, 1856-57 (2016). An administrative remedy is unavailable when: (1) it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) the grievance process is so incomprehensible that "no ordinary prisoner can discern or navigate it," or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859-60.

In this case, plaintiff has presented no evidence that the special grievance process amounted to a "dead end" or was incomprehensible. Indeed, plaintiff was well-acquainted with the prison grievance procedure, and it was because of plaintiff's overwhelming number of complaints and grievances that he was placed on a 90-day grievance restriction. *See* Doc. 75-11. There is no evidence to suggest plaintiff did not understand the special procedure he was required to follow during the period of his restriction.

To the extent plaintiff suggests he was thwarted from accessing the grievance process, he has failed to establish a genuine issue of fact in this regard. Plaintiff alleges he requested Notification of Grievance forms from Inspector Mahlman, but she refused to provide him with the forms. However, a prisoner who simply alleges that prison officials did not provide him with the proper forms to follow administrative procedures does not demonstrate a genuine issue of material fact that he was prevented from exhausting his administrative remedies. *Jones v. Smith*,

266 F.3d 399, 400 (6th Cir. 2001). *See also Willis v. Mohr*, No. 1:11-cv-808, 2013 WL 1281634, at *3 (S.D. Ohio Mar. 26, 2013) (reiterating that plaintiff must show that his remedies were unavailable because defendants thwarted his efforts to follow administrative procedures, not merely that the defendants did not provide him with the necessary forms) (Report and Recommendation), *adopted*, 2013 WL 5773932 (S.D. Ohio Oct. 24, 2013); *Kennedy v. Wurth*, 36 F. App'x 553, 554 (6th Cir. 2002) ("[t]his Court has held that it is inadequate for a prisoner to allege that he was denied a form for a grievance . . . he must show that he attempted to file a grievance without the form"); *Martin v. Johnson*, 72 F. App'x 256, 257-58 (6th Cir. 2003) (same).

Notably, plaintiff actually includes a Notification of Grievance form[2] dated November 10, 2015 (during his period of restriction) as an attachment to his memorandum in opposition for summary judgment, belying his claim that he did not have forms upon which to file a formal grievance. (Doc. 82-2 at PAGEID# 950). In addition, plaintiff was not prevented from filing a grievance without a Notification of Grievance form under the special procedure, and plaintiff was in fact able to file seven grievances during the period of restriction. (Doc. 75-11 at PAGEID# 673). Plaintiff has failed to present evidence establishing a genuine issue of fact showing he was thwarted from accessing the grievance process for the October 30, 2015 and the November 11, 2015 incidents. *See Green v. Haverstick*, No. 16-2523, 2017 WL 5171244, at *2 (6th Cir. Aug. 30, 2017) (because inmate was able to file a grievance subsequent to prison official's alleged refusal to accept a previous grievance, inmate was not prevented from accessing the grievance process). Plaintiff's "generalized statements [to the contrary] are

---

[2] This Notification of Grievance form concerns an incident at SOCF on October 9, 2015.

insufficient to create a genuine dispute of material fact as to whether the administrative process was available to him. . . ." *Belser v. James*, No. 16-2578, 2017 WL 5479595, at \*2 (6th Cir. June 6, 2017) (citing Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Arbuckle v. Bouchard*, 92 F. App'x 289, 291 (6th Cir. 2004) ("[Plaintiff]'s bald assertion that [the grievance coordinator] refused to give him grievance forms is not enough to excuse the complete absence of evidence that he attempted to exhaust his administrative remedies for the many claims he raised in his district court complaint.")). Because there is no genuine dispute as to any material fact regarding non-exhaustion, summary judgment should be granted for defendants on plaintiff's claims regarding the October 30, 2015 and November 10, 2015 incidents.

## IT IS THEREFORE RECOMMENDED THAT

1.      Defendants' motion for summary judgment (Doc. 75) be **GRANTED**.

2.      The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of this Court's Order would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Date: 1/27/2020

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TERRY TYRONE PULLEN, JR.,
    Plaintiff,

vs

CORRECTIONAL OFFICER
MR. COMBS, *et al.*,
    Defendants.

Case No. 1:17-cv-255

Barrett, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

21